ROBERT BAUGH, Superintendent Western and Atlantic Railroad, plaintiff in error, *vs.* McDANIEL & STRONG, defendants in error.

The Western and Atlantic Railroad was sought to be made liable for the loss of eight bags of cotton sent from Atlanta to New York, and which the said road had delivered to the next connecting railroad on the line, and it appeared that the Western and Atlantic Railroad had given two receipts for two lots of cotton, portions of each of which lots were lost beyond their line. One of these receipts simply acknowledged the receipt of the cotton and that it was consigned to New York, by way of Johnsonville, and the other contained the same acknowledgment, but was headed: Western and Atlantic Railroad, East Tennessee and Georgia Railroad, Virginia and Tennessee, and Orange and Alexandria Railroads, and had indorsed upon it, "Through freight contract." And it was in evidence by the shipper that the cotton was delivered to be shipped to New York; also in evidence by the railroad that there was an arrangement between it and the other roads, fixing the amount that each road would charge for the carriage of freight

Baugh *vs.* McDaniel & Strong.

over its road, but no other arrangement, and that this was a through freight contract:

*Held* 1. That the Western and Atlantic Railroad having been built by the State to carry freight and passengers between Atlanta and Chattanooga, it is a matter of grave doubt if its officers can charge the State with a contract to carry freight beyond its terminus to distant points over other roads.

2. That, at any rate, such a contract will not be implied, but must appear to have been distinctly made.

3. That there is nothing in the evidence adduced in this case to make such a special contract, or to take the case out of the rule prescribed in section 2058 of the Revised Code, which is as follows: "Where there are several connecting roads under different companies, and goods *are intended to be transported over more than one railroad*, each company shall be responsible only to its own terminus and until the delivery to the connecting roads."

Railroad Companies. Common-carriers. Before Hon. JOHN COLLIER, Judge *pro hac vice.* Fulton Superior Court. October Term, 1870.

In the winter of 1865, McDaniel consigned two lots of cotton to New York, part of each failed to reach New York and was lost. They sued Baugh, as Superintendent of the Western and Atlantic Railroad. That it failed to reach its destination and was lost, its value, and a demand and refusal to pay for it were shown. The receipt for the first lot was in the usual form of a receipt by said railroad only, for the cotton "marked (McD & S.) consigned by McDaniel & Strong to A. C. Schaeffer & Company, New York, *via* Johnsonville."

The receipt for the second lot was headed: "Western and Atlantic, East Tennessee and Georgia, East Tennessee and Virginia, Virginia and Tennessee, and Orange and Alexandria Railroads. Through freight contract," and was for cotton "marked 'M. D.,' consigned by McDaniel & Strong, to A. C. Schaeffer & Company, New York."

Baugh testified, that this was a "through-freight contract;" that, at that time, he had agreed with the intermediate roads upon through rates of freight, upon cotton, from Atlanta to

Baugh *vs.* McDaniel & Strong.

New York; that the extent and object of this agreement was to determine the whole charge for carrying a bale of cotton from Atlanta to New York, and the proportion of that amount due to each road; that this was its only purpose, and it went no further.

It was shown that the cotton was all delivered to the connecting road, by defendant, in bad order, but what was meant by bad order, was not explained.

The evidence concluded, the Court charged the jury as follows: "The defendant is a common-carrier, and, in carrying goods, is bound to extraordinary diligence.  In order to entitle the plaintiffs to recover, in this case, the evidence must show the delivery of the goods by the plaintiffs to the defendant, to be transported over the road of defendant, the loss of said goods and their value at the place of destination.  If the testimony shows these facts, then the defendant is liable, unless they are excused by the act of God or the enemies of the State.  (It was competent for the defendant to contract to deliver goods beyond the *terminus* of its road; if it did so in this case and failed, it is liable.)  The receipt of goods marked to points beyond its termination is not sufficient, of itself, to raise the presumption that the defendants undertook to deliver the goods at the point of destination, but it ought to be shown, by the evidence, that the defendants contracted to deliver such goods at the point of destination.  (If no contract of that sort has been shown, then the defendant is discharged, when he shows that he has delivered the goods to the connecting roads in as good order as when received for shipment.")  The Court then charged, upon request of defendant, as follows: "The legal liability of the Western and Atlantic Railroad, under the contract, as relied upon, in this case, for loss or damage to the freights, ceased upon the delivery of the freights to the next connecting road, except for loss or damage done on the Western and Atlantic Railroad."  And then added to said charge the following: "If, however, the defendant made a special contract to deliver the goods in

New York, he would be liable for any loss that occurred beyond the *terminus* of his road, or after delivery to the next connecting railroad."

The jury found for the plaintiffs. Defendant's counsel moved for a new trial, upon the grounds, that the Court erred in its charge, in brackets first above, and in adding " in as good order as when received for shipment," in its charge, secondly above in brackets, and in said addition to the requests of defendant's counsel. The Court refused a new trial, and error is assigned on said grounds.

MYNATT & DELL, for plaintiff in error. Defendant not liable for loss beyond its *terminus ;* no railroad is: R. Code, sec. 2058. By contract, a railroad may be: 39 Ga. R., 636. But the superintendent of the State property must show special law to justify his contracts: 37 Ga. R., 240; 7 Cr. R., 366; R. Code, secs. 2153, 968 to 975, 2170. He has no such power. There was no evidence of special contract: 37 Ga. R., 103; 39th, 636. Delivery at *terminus* discharged defendant: R. Code, sec. 2058; 40 Ga. R., 422.

D. F. HAMMOND; ARNOLD & BROYLES, for defendant. Contract may bind common-carrier to deliver beyond *terminus:* 25 Ga. R., 228; 4 Seld., 37; 6 Hill, 157; 8 M. & W. R., 421; 3 E. L. and Eq. R., 497; 17 N. Y. R., 386; 29 Barb., (N. Y. R.,) 35; 18 E. L. and Eq. R., 553; 8 Exch. R., 341; Redf. on Car., secs. 183, 181, 190 to 197; 38 Ga. R., 519. So may Western and Atlantic Railroad: R. Code, secs. 968, 975, (1, 3, 9;) 38 Ga. R., 182. There was evidence of special contract: Redf. on Car., secs. 182 and note, 188, 189, 190, 191; 38 Ga. R., 519.

McCAY, J.

1. Whilst we admit that the Western and Atlantic Railroad is, by its Superintendent, authorized to bind the State in all matters pertinent to its business as a railroad, yet we

have great doubts if it was ever contemplated that the Superintendent should have the right to undertake to carry freight or passengers beyond the line of the road.  It might present an awkward question of State rights if such a practice were common.  So great a corporation as the State of Georgia might be a very dangerous rival among common-carriers, if such a general power were recognized.  For this reason, as well as from the want of any express power to so bind the State, we have great doubts if the Superintendent *could* make such a contract, and we are not disposed to *impose* such an one, in the absence of an express undertaking, to that effect.

But I do not put my judgment upon this ground alone. Although the current of common law authority is pretty decided, that the receipt of goods, destined for a point beyond its line, by a railroad company, charges the company with the duty of delivering the goods at the point of destination, notwithstanding the company's road may not extend so far, (See 3 English Law and Equity Reports, 497; 18 English Law and Equity Reports, 553, 557), yet it cannot be denied that this is a very unusual exception to the general charters.  A railroad company is almost always chartered for the construction of and to build and *use* a road within defined limits; and it cannot, ordinarily, exercise its franchises beyond those limits.  Its character as a common-carrier is incident to its charter and its business, and it is an anomaly that it can, even by positive contract, undertake to carry goods beyond its line.

This Court, in ............ *vs.* ............, held that the Macon and Western Railroad could not run a line of wagons to transport goods from its depot to the depot of the Central Railroad, a distance of not more than a mile.  So that it is, as I have said, rather an anomaly, that though a railroad company cannot do this by its own wagons, it may undertake to carry goods any distance.  Yet this is the current of authority:  Redfield on Railways, 282; 8 Cowen, 223; 10

Rich., 382. The case in 22d New York Reports, 258, goes upon the ground of estoppel. It admits that the contract is illegal, but it having been expressly made and acted upon, the Court held the company bound on its contract, on the principles of estoppel; though SELDEN, Judge, denied even this, and concurred in the judgment on the ground that, though the contract was illegal, the company had committed a tort, in carelessly carrying the plaintiff, by which he was damaged.

But though this is the current of authorities at common law, it is clear to me that our Code, section 2058, alters this rule, so far at least as relates to that implied contract, which is raised by the mere receipt of goods destined to a point beyond the *terminus* of the receiving road. That section is in these words: " Where there are several connecting railroads, under different companies, and the goods are intended to be transported over more than one railroad, each company shall be responsible only to its own *terminus*, and until the delivery to the connecting road; the last company which has received the goods as 'in good order' shall be responsible to the consignee for any damage, open or concealed, done to the goods, and such companies shall settle among themselves the question of the ultimate liability."

2. Perhaps if a company were to make an express contract to carry goods beyond its line, this section might not excuse it from a loss on a connecting road, but clearly, if nothing appear but that it was " intended the goods should be transported over different roads " each company is "liable *only* to its own *terminus*, and until the delivery to the connecting road."

What more appears here? The *most* that is proven is that these goods were to be transported to New York over several specified roads; *nothing* was said as to who should be responsible in case of loss or damage. Nor is there any special contract of the Western and Atlantic Railroad to do the transportation over the whole route. At common law such

Baugh *vs.* McDaniel & Strong.

an undertaking would be implied from the mere receipt of the goods by the Western and Atlantic Railroad as a common-carrier.   But, if section 2058 of the Code means anything, it must mean that such an implied contract does not arise in this State.   The common law reasons thus:   "You are a common-carrier; you have received these goods, openly destined for a distant point; you have not limited your obligation; the law implies that you have undertaken to carry them to the point they are intended to be transported to." This section says directly the contrary, and declares that when goods are intended to be transported over more than one road, each company shall be responsible only to its own *terminus,* and until delivery to the next road."

3.  What is there in the evidence in this record to indicate any special contract, any undertaking by the Western and Atlantic Railroad, that *it* undertook to transport this cotton to New York.   The plaintiff says the goods were delivered for transportation to New York.   It is a fact, too, that the receipt says consigned to New York, but is this any more than is covered by the words of the statute, "if the goods are intended to be transported over different roads."   We think not.  It will be noticed, too, that the case provided for by this section of the Code, is clearly a case where the roads are each chargeable beyond their *line.*   Ordinarily, a railroad only transports goods to its own depot, and there holds them until called for.   If goods are sent from Atlanta to Chattanooga, the road transports them to its depot at Chattanooga, and holds them till called for.   But when goods are intended to be transported over more than one road, the receiving road is bound to "deliver" them to the connecting road on the line.   Very clearly the very case here before us is contemplated, to-wit: when it is distinctly understood that the thing is to be transported over several roads.   The agent, it is true, says this was a through contract, but he defines what he means by this.   He says there was an agreement between the roads, that through freight should go over each

road at a lower rate than ordinary freight; and this, he says, was all he means by a through freight contract.

Upon the whole, we are clear here was no evidence of any express undertaking by the Western and Atlantic Railroad to carry this cotton to New York. All that can be said is, that it was understood that it should be transported over several connecting roads to New York. In such cases, the Code provides that each road is only liable over its own road, and until delivery to the next road. There was nothing in the evidence to justify the charge, as to the liability of the road, on a special contract. There was, in fact, no special contract, except as to the rate of freight. The goods were received, consigned to New York, to be transported over several defined roads to New York, and the only obligation upon the Western and Atlantic Railroad, beyond its *terminus*, that could arise, would be the obligation, implied by the common law, that the receipt of goods, destined for a distant point, raises an implied obligation in the carrier to deliver them at that point. But as we have seen, our Code changes that rule, and holds each company liable only for the delivery to the next road.

The question of public policy, raised on the argument, can have no force against the express words of the statute. But it seems to us that the policy is with the statute and with the construction we give to it. It may be very convenient for one of our citizens, who ships goods, in case of loss or damage, to sue the road to which he delivered them, and thus obtain his redress at home. But it must be remembered that the people of this State are also large shippers, from other points here, and in case of a loss on one of our roads, it is a great public convenience to have the right to seek redress here, and not be driven to sue in New York, or Kentucky, or Tennessee, or other place of shipment. Each road receipts to its connecting road for goods, and the statute holds each road until it produces a receipt, in "good order," from the next road. Through freights, without stoppage, without in-

Baugh *vs.* McDaniel & Strong.

termediate consignees, and without change of bulk, are a great public good, and we think public policy lies in encouraging the practice, rather than discouraging it by holding the receiving road liable for losses beyond its *terminus.*

Judgment reversed.

LOCHRANE, C. J., concurring.

The facts of this case have been recited, and I will not repeat them, but confine myself to the question of law involved in the case, remarking that this is an important question upon its legal principles and public policy.

In my opinion the liability of railroads in Georgia is defined by section 2058 of the Code, and nothing but an express contract will enlarge or extend the liability beyond the *terminus* of the road and delivery to the connecting road. I am not unaware of the construction which may be given to this section of the Code, as deduced from its concluding provisions, that it was intended only to regulate the liability of the connecting roads with each other and define the responsibility of the last road receiving the property, in good order, to the consignee.

After a careful consideration of the law, I am not prepared to give it this limited construction. Its language is: " When there are several connecting railroads, under different companies, and the goods are intended to be transported over more than one railroad, each company shall be responsible *only to its own terminus* and until delivery to the connecting road." This language is plain and unambiguous; "shall be responsible only to its own *terminus,*" has neither qualification nor condition. It speaks the will of the Legislature on the law of railroad liability: " The last company which has received the goods, as in good order, shall be responsible to the consignee for any damage, open or concealed, done to the goods, and such companies shall settle among themselves the ultimate liability."

This provision and its reasons of justice and convenience

strike me with satisfactory clearness. It specifies the road the consignee may recover against, upon goods damaged, leaving the roads to settle among themselves their respective liabilities. But the first part stands separate and independent, *not upon a question of damage done to goods, but the liability of the road generally for loss or damages* to the extent of its own line only, and until delivered to the connecting roads.

This is the contract liability fixed by law under the Code; and, except there be a special contract to carry goods beyond the terminus of the road, the liability of the carrier is ended at his *terminus* by delivering the goods to the connecting road, if intended to go farther.

With the view I entertain of the law I hold that the contract to carry beyond the *terminus* must be special. It will not be implied. My reason for this opinion is, that the law will not imply a greater liability than it imposes, and, in the absence of any express contract, the *lex loci* will govern in implications arising upon the construction of contracts under it.

Again, the law of common-carriers is a law based upon public policy of interest and convenience; and, when settled by rule or statutory provisions, presumption will be in favor of conformity therewith, except expressly negatived by the special contract.

Again, railroad corporations will be construed within the limits of their charters. And if the law governing common-carriers is a law based upon public policy, it is a rule that contracts made by corporations against that policy would be held *ultra vires*. In 40*th Georgia Reports*, 624–5, this Court, referring to the aptness to forget the fundamental law, says: " They are apt to slide into the notion that a corporation is an individual in all respects so far as business matters are concerned." New and distinct enterprises not declared in the charter, under a pretence that they are in furtherance of the declared design, involving new risks to its stockholders, and not fairly within the terms of the original

Baugh *vs.* McDaniel & Strong.

grant, are forbidden.  And covering this question, construing the law governing charters, we lay it down, that the general law of this State applies to them where there is no chartered privilege or grant conflicting, or where it is silent; and that it moves within the sphere of the general law of the land, subject to its provisions and entitled to its protection. In the case before us, I therefore hold, that the contract to carry beyond the *terminus* of the road, if permitted by the law, and from this permission not *ultra vires*, will only be held binding where the contract is express.  It will not be implied.

This leads me to another view of the case at bar.  This action is brought against the Superintendent of the Western and Atlantic Railroad.  Under what power could he enter into a special contract to be liable for loss of goods beyond the *terminus* of the road ?  We apprehend if the general law applies to other corporations it applies with more than ordinary power over this enterprise.

It is not necessary to enter into any detailed history of the legislation under which the State road has been governed. The Code defines the powers of the Superintendent, section 975.  And in view of the section 2058, defining liability, there is no power granted or given to him to enter into new risks or bind the State for losses over or beyond the line or *terminus*.  It is not there, nor is it incident or essential to his duties as enumerated.  Such power will not be implied, in face of the general law:  37 Georgia Reports, 240.  For myself, therefore, I hold that the delivery of plaintiff's cotton at the *terminus* of the Western and Atlantic Railroad, under the proof in this case, ended the law of liability of the road.

But we hold, under the facts in this case, there was no special contract proven.  If A delivers goods to B, a common-carrier, directed to a pointed beyond the *terminus* of B.'s road, and B receives them and receipts for them under such directions and destination, B is not bound by such a re-

ceipt as a special contract to deliver them at their destination, but fulfils his contract by their delivery at the *terminus* of his road to the railroad connecting *en route*. I have considered the cases in England and this country found in the Reports; but feel controlled by the Code of this State in construing the effect of such receipt for destination beyond the *terminus*. In this case the argument *contra* is based on the fact that the receipt given was headed "through freight contract." Does this heading authorize the construction of the special contract set up? Was it contracted that the Western and Atlantic Railroad would be liable for the delivery of the goods in New York? The Superintendent swears that it was not. He had entered into an arrangement with connecting roads for a *pro ratâ* of freights as between themselves; and this was the extent of his arrangements. He offered the facility of connecting roads to shippers, but it is not expressly stipulated that he bound his line for the delivery at destination. Could such a construction be contemplated? Was it actually understood? Was there any fair opportunity so to believe? Does any man deal with railroads on any such view of their liability in Georgia? Express companies do so contract, and this distinguishes their business from *railroads* that run only their cars and custodians to their *terminus*.

When we say the Western and Atlantic Railroad contracted to deliver their cotton to the consignees in New York, and to be liable for its loss, except occasioned by the act of God or the public enemies, how do we arrive at such a conclusion except by presumption based on the common law liability of common-carriers?

This I hold insufficient. The law of liability governs unless changed by contract liability expressly stipulated. Nowhere can I see enough to change the liability imposed by law, under the Code, and substitute a different liability against the law and the powers of the party to stipulate for greater risk.

Baugh *vs.* McDaniel & Strong.

Again, if this contract be construed under the testimony, if such be held as a special contract, under the law of common-carriers, then the Western and Atlantic Railroad assumed the transportation and risk over other roads without hire; for its *pro rata* paid only for the transportation to its terminus. Turn this case as we will, we arrive finally at the same conclusion. But, not desiring to swell this opinion beyond the necessary enunciation of the principles and reasons we announce and entertain, we will here close our concurrence with the judgment pronounced by the Court.

WARNER, J., dissenting.

This was an action brought by the plaintiffs against the Superintendent of the Western and Atlantic Railroad, to recover the value of eight bales of cotton alleged to have been delivered by the plaintiffs to the defendant at Atlanta, to be transported to Schaefer & Company, New York, which were lost. The original railroad receipt given for the cotton was also lost; there was a substituted receipt offered in evidence, signed by the agent of the road, dated 1st November, 1865, headed: Western and Atlantic, East Tennessee and Virginia, Virginia and Tennessee, and Orange and Alexandria Railroads, *through freight contract*, for thirty-seven bales of cotton, consigned by McDaniel & Strong to A. C. Schaefer & Company, New York. One of the plaintiffs testified, that the cotton was delivered to the Western and Atlantic Railroad for transportation to their agent in New York, that eight bales of the cotton had never been received there, by their agent. Baugh, the then Superintendent of the road, testified, that at the time the cotton was shipped, he had made an agreement with the intermediate roads from Atlanta to New York, for through rates of freight on cotton, and that this was a *through-freight contract*. The Court charged the jury "that it was competent for the defendant to contract to deliver goods beyond the *terminus* of its road, and if the defendant did make a special contract to deliver the cotton

in New York, he would be liable for any loss that occurred beyond the *terminus* of his road or after delivery to the next connecting road." To which charges of the Court, the defendant excepted. Under the provisions of the 975th section of the Code, the Superintendent of the Western and Atlantic Railroad had the power and authority to make a contract with the shipper for the transportation and delivery of goods beyond the *terminus* of its road: 25th Georgia Reports, 228. The 2058th section of the Code regulates the liability of *connecting* railroads in this State, when the goods are intended to be transported over more than one railroad, to the *consignee* thereof; that is to say, if goods are shipped from New York to Macon, *via* Western and Atlantic Railroad, and should be lost between Chattanooga and Macon, and the consignee should sue the Western and Atlantic Railroad for them, and prove the receipt of the goods by the latter road, it would be a good defense to show that the goods had been safely transported over that road, and delivered in good order to the Macon and Western Road. By the 2040th section of the Code, which adopts the common law rule, the carrier is liable for the loss of the goods, unless it was occasioned by the act of God, or the public enemies of the State. If the Western and Atlantic Railroad had received goods at Chattanooga to be transported to Macon, and the same had been lost, and that road had been sued by the consignee thereof, for the goods, it would not have been a good defense under the common law rule, to have shown that the goods had been delivered to the Macon and Western, a connecting road; but the 2058th section of the Code changes that common law liability so far as to allow the Western and Atlantic Railroad to show that the goods were delivered to the connecting road in good order, and makes the last company, receiving the goods in good order, responsible to the consignee therefor; that is the legal effect of the 2058th section of the Code. But if the Western and Atlantic Railroad makes a special contract with the shipper, that he will transport his goods from

Atlanta to New York, and the goods are lost beyond the *terminus* of this road, the defendant would be liable on his contract of bailment, for the loss of the goods. "Bailment to deliver, is a delivery of goods in *trust* upon a contract expressed or implied, that the trust shall be *faithfully* executed on the part of the bailee. If money or goods be delivered to a common-carrier, to carry from Oxford to London, he is under a contract in law to pay or carry them *to the person appointed*:" 2d Blackstone Commentary, 451–2; 3d Blackstone Commentary, 163; Code, 2032. The responsibility of the carrier commences with the delivery of the goods to himself or his agent, and ceases with their delivery at destination according to *the direction of the person sending*, or according to the custom of the trade: Code, section 2044. There is sufficient evidence in the record in this case, of an express contract on the part of the road to transport and deliver the cotton in New York, the point of destination, to authorize the charge of the Court to the jury, and the jury, by their verdict, having found that there was such a special contract, under that evidence, a new trial ought not to be granted.