CABANISS *et al.*, assignees, *vs.* PONDER, mayor, *et al.*

1. The town of Forsyth issued $30,000.00 in bonds, bearing two per cent. interest. It entered into a contract with P. & Son, brokers, to give them the use of bonds of the nominal value of $7,500.00, provided they would keep $7,500.00 more at par as a circulating medium in the town and redeem them when presented; when the town by taxation should redeem $7,500,00, the other $7,500.00 were to be delivered up to be canceled. P. & Son became bankrupts, having on hand $4,900.00 of the bonds. The town claimed that these should be delivered up for cancellation; the assignees claimed them as assets :

*Held,* that the contract created a trust in the nature of a bailment, and when it became impossible for the bankrupts to comply with their contract, the town was entitled to recover the bonds.

2. It is immaterial that the bonds in the hands of the bankrupts were not the identical ones delivered to them by the town. The contract from its nature contemplated a use of the entire issue and a return in kind.

3. If the brokers knew that more than the exact amount agreed upon had been issued, and nevertheless received their part and went on with the contract, they could not afterwards complain.

Contracts. Trust. Bankruptcy. Bailment. Municipal corporations. Bonds. Waiver. Before Judge HILL-YER. Monroe Superior Court. February Term, 1879.

To the report contained in the decision, it is only necessary to add the following: The town authorities claimed that it was impossible for Pye & Son to comply with their contract because of their total insolvency and bankruptcy. They therefore insisted that the bonds in the hands of those brokers should be delivered up for cancellation, and prayed injunction against their use. The assignees, as representing the depositors and general creditors, resisted this, and claimed that the bonds should be delivered to them for distribution. The defendants introduced testimony to show that the bonds on hand came from deposits in the usual course of trade, and could not be identified as the specific bonds originally delivered to them; that council had agreed to withdraw from circulation $1,500.00 of the bonds annually, but had failed to do so, and that an excess of $900.00 of the bonds had been issued over the agreed $30,000.00. It appeared that the council were prevented from redeeming the bonds by a bill filed by tax payers to enjoin the levy of a tax for that purpose; also that Pye, one of the firm of Pye & Son, assisted in issuing the bonds and knew of the extra issuance of $900.00. The jury found for complainants. Defendants moved for a new trial on the following, among other grounds:

(1). Because the court refused to grant the petition of the assignees that the bonds be turned over to them as part of the assets of the bankrupts.

(2). Because the verdict was contrary to law and the evidence.

(3). Because the court charged, in substance, that the contract was a bailment and governed by the laws of bailment, and any failure on the part of B. Pye & Son to carry out their part of the contract was a conversion, and gave the lender a right of action against the borrower. If the jury believe defendants have failed to comply with their contract and complainants have complied, complainants would be entitled to the injunction and to a decree, and if defendants have any of said issue in possession, requiring the same to be delivered up and canceled, although these funds in hand may have been placed with defendants as a general deposit.

The motion was overruled and the assignees excepted.

BECK & BEEKS; STONE & TURNER, for plaintiffs in erro .

A. D. HAMMOND; T. B. CABANISS; H. C. PEEPLES, for defendants.

JACKSON, Justice.

The town authorities of Forsyth brought a bill in equity against Pye & Son, bankers in that town, to subject certain bonds to a claim of the town; the bonds were the remnant of bonds issued by the town authorities under an act of the legislature for the advancement of its educational interests, remaining in the vault of the bank after it broke and the bankers became insolvent, amounting to some $4.900.00. Pye & Son went into bankruptcy, and the plaintiffs in error were appointed their assignees and made defendants to the bill, representing the depositors and general creditors of the bank; and the contest is, whether the town authorities are entitled to receive these bonds to be delivered up and canceled, or the assignees to take them for distribution among the creditors of Pye & Son. That question turns on a construction of the con-

tract or obligation entered into by the town authorities and Pye & Son. The legislature authorized the issue of bonds by the town, and the corporation contracted with Pye & Son for and in consideration of the use of $7,500.00 worth of the bonds to keep good $7,500.00 worth of other like bonds; and when $7,500.00 were redeemed by the town, then the other $7,500.00 were to be delivered up to be canceled. The bonds bore interest at 2 per cent. per annum, and the bankers had the use of their half without interest. A similar contract was made with another banking house in Forsyth for a like amount— the entire issue being $30,000,00, and the use of half being given to the two banks to keep the other half good among the people of the town and those interested therein. The contract is set out in full in the record, but the substance of it is about as above written.

On the trial of the case the jury found for the town, and the assignees made a motion for a new trial, which was overruled, and they excepted.

The controlling question is, whether the contract makes such a case as in equity, under the facts in the record, will entitle the complainants to have the bonds left in the hands of Pye & Son returned to them to be canceled?

1. We cannot hold that the transaction makes technically what is called a loan for use; because such a loan is under our Code " gratuitous," and " at the will of the grantor." Code, §2126. But nevertheless, we think it created a trust whereby Pye & Son obligated themselves for a valuable consideration, to-wit, the use of bonds of the nominal value of $7,500.00, to redeem when presented at their counters other $7,500.00 in value of the bonds, and keep them circulating at par. This they have failed to do, and can never do, because they are wholly insolvent. The object of the bill is to lay hold on such of the bonds as are in the hands of Pye & Son to have them canceled, one of the conditions of the contract being that when the town had redeemed one-half, the other half should be de-

livered up for that purpose.    Such had been done by the
town authorities when the case was tried.    It is true that
when the bill was filed, the time had not arrived for the
redemption of one-half by the town, but no complaint
had been made by the bankers of the neglect of the town
in such form as to bind the town, or to offer to rescind
and annul the contract.    When it became apparent that
Pye & Son could not use the goods entrusted to them by
the town for the purpose for which these bonds were en-
trusted, the town had the right ro rescind the contract
and to recover in equity the bonds which remained against
Pye & Son, and consequently against general creditors, who
stood in their shoes.

2. It is immaterial that these $4,900.00 of bonds were
not proven to be part of the identical $7,500.00 entrusted
to Pye & Son for their own use.    They could not, from
the nature of the undertaking, keep the identical bonds
belonging originally to themselves, and for their use ; for
the contract contemplated the use of all the bonds as a
sort of circulation in the town, and Pye & Son had the
right to put them out for that purpose.    The spirit of the
agreement is to return the same in kind.

3. In regard to the over issue of bonds, and the com-
plaint of Pye & Son that that relieved them, it seems a
sufficient reply to say that it was made to prepare and
put out the entire issue, and that they received their part
with knowledge thereof, and went on with the business
regardless of that fact.

Whilst therefore we cannot reconcile this case with our
Code, as making a loan for use, yet it does make a *quasi*
bailment in the broader sense of the definition thereof
in §2058 of the Code, which declares : "A bailment is a
delivery of goods or property for the execution of a spe-
cial object, beneficial either to the bailor or bailee, or both;
and upon a contract, expressed or implied, to carry out
this object, and dispose of the property in conformity
with the purpose of the trust."    As to the particular sort

of bailment, we think it partakes more of the nature of a contract for hiring than a mere loan.   For the contract is that whereby "one person grants to another the enjoyment of a thing, or the use of the labor and industry, either of himself or servant, during a certain time for a stipulated compensation."   Code, §2085.

At all events, it is a trust—the trust has failed by the insolvency and bankruptcy of the trustee, and the *cestui que trust* has the right to get back his own goods, which are withholden and attempted to be converted to pay the trustee's debts.

Therefore, we think the verdict and judgment substantially right, and there being no special depositors of these bonds, that the equity of the town entitles it to the recovery and cancellation of the bonds.

Judgment affirmed.