MOORE *v.* KING MANUFACTURING COMPANY.

1. The evidence authorized a charge as to the duty of an employee to pursue the safe method for the performance of his work, where there were two methods, one safe, the other dangerous.
2. The instructions based on the theory that the defendant's foreman was assisting the plaintiff in the work in which he was engaged when injured, and that the foreman at the time was doing an act which was ordinarily within the scope of the duty of a fellow-servant, were not authorized by the evidence.
3. Nor did the evidence warrant a charge on the fellow-servant rule.

Argued April 20, 1905.—Decided January 9, 1906.

Action for damages. Before Judge Henry. Floyd superior court. September 10, 1904.

Rufus J. Moore brought his action against the C. L. King Manufacturing Company, to recover damages for injuries alleged to have been sustained by him 'while he, as an employee of the defendant, was repairing and adjusting a gang-saw in its machine-shop, which

he alleged was suddenly and negligently put in motion by John L. Shellenberger, general superintendent and principal managing agent of the defendant company. The defendant in its answer denied that Shellenberger put the gang-saw in motion, and further denied that plaintiff was injured in consequence of any negligence on the part of the defendant. The trial resulted in a verdict for the defendant. The plaintiff's motion for a new trial having been overruled, he excepted. With reference to the position which Shellenberger occupied in the shop, relatively to the plaintiff and the defendant company, the plaintiff testified: "Mr. Shellenberger was superintendent and general manager, in charge of the business in every way." Shellenberger testified: "C. L. King was president of the mill. C. L. King was general manager. I did not work regularly on any of those machines. Occasionally, when it was necessary to do anything that did not require any length of time, I did work on them. I did not have much time to work on machinery, because it takes most of my time to direct the employees and to see that they have work to work on. I was foreman. My duties as superintendent are, to employ hands and set them to work; to lay out and plan work, direct the employees to do whatever there was to do. I had general charge of the shop. Mr. King had authority above me in the shop. In the shop work I was subject to Mr. King's orders, in the shop or anywhere else. Sometimes Mr. King stayed in the shop, and generally in the office, but I superintended the shop work. He directed me and I directed the employees. The directions to the employees were all given through me." He further testified that he employed the plaintiff. The case made by the evidence for the plaintiff was to the effect, that, on the day his injuries were received, he was at work on a machine known as the planer, when Shellenberger directed him to turn over the work he was doing to another employee, and that the plaintiff should adjust a gang-saw that was in the shop; that in order to do the work directed it was necessary for him to stop the machine that was running the gang-saw, in order for him to adjust the saws then on the machine; that while readjusting them Shellenberger negligently started the machine in motion, and the plaintiff was, in consequence, injured as set out in his petition. It was admitted by the defendant company that Shellenberger directed the plaintiff to readjust the gang-saw; but the evidence in its behalf was to the

37

effect that at the time the plaintiff was injured Shellenberger was about twelve feet away from the gang-saw, and that he had nothing to do with starting it in motion.    It appeared from the evidence that the gang-saw was affixed to a table, which was three and a half by five feet.    There was an open space for the bed in this table, four inches wide, one and a half inches deep, and eighteen inches long, through which the saws projected, there being slots through it for the saws to run in.    The bed was fitted in this open space and made the top of the table solid, so that lumber could pass smoothly over it.    Different beds had to be adjusted to the saws as the spaces between them were changed for ripping different sizes of lumber. There were tenons on each end of the bed, which fitted in corresponding notches in the bed space.    There were three saws on the mandril.    To start them the belt had to be shifted from a loose pulley, called the idler, to a tight one, and to stop them, from the tight one to the idler, by means of a stick called the shifter, at the right hand front corner of the table, and in easy reach of the operator of the machine.    On the occasion when the plaintiff was injured, he was told by Shellenberger to adjust the saw to cut pieces one half by three quarters of an inch.    Plaintiff put three smaller saws on the mandril and smaller collars between the saws, then made a bed of oak timber of the size above stated, and placed one end of it in the notch in the table, in front of the saws, put his right hand on that end, and, for the purpose of cutting the slots in it, pressed the piece on the other end over the saws with his left hand; and he testified that while in this position, Shellenberger suddenly and negligently started the saws, causing the injury.    The defendant, as already stated, contended that Shellenberger did not start the gang-saw, and that the plaintiff's injury was caused by his own negligence, in selecting a dangerous method of doing the work in which he was engaged, instead of the proper and obviously safe method of doing it, that is, by preparing a plank long enough to reach over and beyond the saws, so that while cutting the slots he could hold it down with his right hand, in front, against the cleat, and press it beyond the saws with his left, so that his hands would be out of the way of the saws; and that the slots should have been finished with the hand-saw and the timber then fitted in the space in the table.    Evidence was submitted by the defendant tending to

show that this was a proper and safe method of doing the work on which the plaintiff was engaged when injured.

*Dean & Dean* and *C. E. Harris*, for plaintiff.

*J. Branham, J. F. Hillyer,* and *McHenry & Maddox*, for defendant.

FISH, C. J. (After stating the facts.) 1. The court instructed the jury: "When an employeé is confronted with two methods of doing a certain thing, the one safe and the other dangerous, he owes the duty to his employer to pursue the safe method, and any departure from the safe method will prevent his recovery in the event he is injured, that is, any intentional or conscious departure, any departure that was inconsistent with ordinary care." Error was assigned on this charge, because there was no evidence to authorize it. As set forth in the preceding statement of facts, the defendant contended that the method adopted by the plaintiff in adjusting the saws was very dangerous and that there was a safer way of doing it, and submitted evidence tending to prove such contention; so there was no merit in this assignment of error.

2. The court further instructed the jury: "If you find from the evidence that John Shellenberger was foreman in defendant's shop, or boss of the shop, but that he was helping and assisting the plaintiff in his efforts to repair and adjust that gang-saw, I charge you, notwithstanding he was foreman, he is in that transaction a fellow-laborer; and if the plaintiff was injured in that way, the defendant would not be liable to the plaintiff for such negligence." One of the exceptions to this charge was, that there was no evidence that Shellenberger "was helping or assisting the plaintiff in his efforts to repair and adjust the gang-saw." The defendant's witnesses denied that Shellenberger had anything to do with the machine in question, beyond instructing the plaintiff to adjust the saws; while the plaintiff's evidence was merely to the effect that after giving such instruction Shellenberger negligently started the gang-saw. So it is clear there was no evidence to authorize the jury to find that Shellenberger was assisting the plaintiff in the actual work of adjusting the gang-saw, and the exception is well taken.

3. Another charge excepted to was as follows: "I charge you again, that if you find from the evidence that John Shellenberger was the foreman or boss of defendant's shop, subject with the plain-

tiff to the orders of a general manager, and that he did an act which is ordinarily in the scope of a colaborer, and which resulted in the injury of the plaintiff, then he, Shellenberger, would be a fellow-servant, and the plaintiff would not be entitled to recover." One of the exceptions to this charge was that there was no evidence that Shellenberger did an act which was ordinarily within the scope of a colaborer or fellow-servant. We think the charge was open to this exception. The evidence disclosed that the gang-saw, which the plaintiff was adjusting when injured, was affixed to a table which was three and a half by five feet; that the shifter used for starting and stopping the machine which operated the gang-saw was at the right-hand front corner of the table and within easy reach of the person operating the saw; and it is at least clearly inferable that it was the duty of the operator of the saw to start and stop the machine which ran it. Certainly there was no evidence that it was the duty of any other employee than the one operating the saw to start or stop such machine, or any circumstance from which it could be inferred that the starting or stopping of the machine was ordinarily within the scope of duty of any employee other than the operator of the saw.

4. The court also instructed the jury as follows: "I charge you that when one enters the service of another, he assumes the usual and ordinary risks incident to the employment, such as the carelessness and negligence of a fellow-laborer;" and "If you find, within the rule that I have given you, that John Shellenberger at the time was a fellow-servant of the plaintiff, then, irrespective of what he did, or whether he was or was not negligent, the plaintiff could not recover." The error assigned upon these instructions was, that there was no evidence that Shellenberger was a fellow-servant of the plaintiff. The plaintiff, as we have set out in the statement of facts, testified that Shellenberger was superintendent and general manager of the defendant's business in every way. Shellenberger, the only other witness on this subject, testified, that King was president and general manager of defendant's business; that while he, Shellenberger, did not work regularly on any of the machines in the shop, he occasionally, when it was necessary to do something that did not require any length of time, did work on them; that he had little time to work on machinery, as most of his time was required in directing the work of the employees; that he was foreman, and as

such his duties were to employ hands, to lay out and plan work for them and set them at it, and to direct them what to do. He had general charge of the shop and superintended the work therein. King directed him and he directed the employees. Under this evidence, we are quite clear that Shellenberger was the representative or vice-principal of the defendant company, and the mere fact that he occasionally worked on a machine when it was necessary to do something that required but little time did not constitute him a fellow-servant of the plaintiff, if he, while not engaged in assisting the plaintiff to operate the saw or the machine which ran it, negligently started the machine without waiting for the plaintiff to start it himself.

The present case differs essentially in its facts from the cases of *McDonald* v. *Eagle & Phenix Mfg. Co.,* 67 *Ga.* 761, 68 *Ga.* 839, *McGovern* v. *Columbus Mfg. Co.,* 80 *Ga.* 227, *Cates* v. *Itner,* 104 *Ga.* 679, *Hamby* v. *Union Paper Mills Co.,* 110 *Ga.* 1, *Gunn* v. *Willingham,* 111 *Ga.* 427, and *Sheppard* v. *Southern Pine Co.,* 118 *Ga.* 292; in all of which it appeared that the boss or foreman, whose negligence caused the injury complained of, although having direction of the job, was actually laboring with and aiding the colaborer injured by the boss's negligence, and it was consequently held that he was, while thus engaged, a mere fellow-servant of the one injured. The rule that a servant is a vice-principal of his master only when executing the absolute, or non-assignable, duties of the master has not been established in this State. See *Atlanta Cotton Factory* v. *Speer,* 69 *Ga.* 137, *Taylor* v. *Georgia Marble Co.,* 99 *Ga.* 512, and *Blackman* v. *Thomson-Houston Co.,* 102 *Ga.* 64.

*Judgment reversed. All the Justices concur, except Beck, J., not presiding.*