22513. QUEEN *v.* PATENT SCAFFOLDING COMPANY.

Decided February 8, 1933.

*Harwell, Fairman & Barrett, Jones, Fuller, Russell & Clapp,* for plaintiff.

*Haas & Gambrell, McDaniel, Neely & Marshall, W. Neal Baird,* for defendant.

Sutton, J. Mrs. Sallie Queen, the mother of George Queen, brought suit against the Patent Scaffolding Company, making this case in her petition:

On March 7, 1930, George Queen was working as a mason for the Southern-Ferro Concrete Company on the Union Station building in Atlanta. George, together with his brother Roy, was working on a swinging scaffold, which was swung on the rear end of the building. George was on the end of the scaffold engaged in his work when for some reason he partially lost his balance and caught hold of the guard-rail, which broke, causing him to be precipitated to a sloping roof below and thence to the concrete pavement, and in consequence he was fatally injured. This scaffold was leased to the employer by the defendant. On it there was a guard-rail of the same length, constructed of wood and about three by three-fourths inches in thickness and width. The guard-rail was about three feet above the platform of the scaffold. The scaffold was swung by two steel ropes fastened to two hooks made fast to the top of the building. These ropes were fastened to ratchets that were attached to iron hangers which held the platform of the scaffold, the guard-rail resting in eyes in the top of the hangers. The hangers were about three feet from the ends of the platform. George Queen was working on the left end of the scaffold, facing the building, and when he put his hand near the end of the guard-rail it broke in two about five or six feet from the end causing him to fall. This guard-rail was weak and defective in that it was cross grained at or near where it broke. The guard-rail was covered with a heavy coat of paint which concealed this defect, and the defect was unknown to the decedent, and could not have been known by him by the exercise of ordinary care, and the decedent did not have equal means with the defendant of knowing thereof. The defendant constructed the scaffold, painted this guard-rail, and knew of this defect, or by the exercise of ordinary care or by an inspection could have known of it. The scaffold with its concealed defective guard-rail, was imminently dangerous to anyone using it who was ignorant of the defect. The guard-rail was a protection to one using the scaffold to steady himself if he became overbalanced, and this was its purpose, and the defendant knew that it was a thing of danger in its defective condition. The scaffold was rented by the defendant to the employer for the use of its employees to be used over the sides of buildings high above the ground. The defendant was negligent in renting the scaffold with a defective guard-rail; in constructing the guard-rail of weak and cross-grained

wood, which would break when any weight was placed on it, but should have constructed it of strong and straight-grained wood which would not have broken so easily; in concealing the defect therein by covering it with paint; in renting the scaffold with a defective guard-rail, knowing that it was defective and imminently dangerous and might cause the loss of life; in failing to make an inspection of the scaffold and guard-rail; and in renting a scaffold with a defective guard-rail when it could and should have discovered and remedied the defect in the exercise of ordinary care. This negligence contributed to and was the proximate cause of the death of the decedent, who was free from all fault and negligence. The decedent was unmarried and was living with plaintiff, who was sixty-one years old, and the decedent contributed to her support, and helped her in her household duties and waited upon her while she was sick. There was no demurrer to this petition.

On the trial the plaintiff proved substantially the case as laid, except that the evidence tended to show that the decedent completely lost his balance and turned to his right, which was towards the middle of the platform, and caught hold of the guard-rail with both hands, when it split and he fell and was killed. The evidence did not show that the guard-rail was covered with a heavy coat of paint, but did show that there was paint on the guard-rail, which made it necessary to closely inspect the rail to discover the fact that the same was cross-grained in a certain place. The evidence further showed that the brother of the deceased did not examine the guard-rail and that it was his opinion that the decedent did not, and that it was not customary for them to do so. The evidence further showed that had the guard-rail been constructed of straight-grained wood, it would have been three or four times as strong as it was, and that cross-grained wood would split easily. The evidence showed that the guard-rail split at the place where it was cross-grained. At the conclusion of the evidence the defendant moved to dismiss the case upon the ground that no recovery was authorized under the pleadings and the evidence. The motion was sustained and the case dismissed. To this judgment the plaintiff excepted.

■ At the outset the defendant contends that the decedent had two ways of doing the work, during the performance of which he was killed, the one by building a scaffold off the roof underneath

where the work was being conducted and pointing it upward, which would have been a safe way, the other dangerous, by using a swinging scaffold, free at both ends and suspended by cables or ropes hooked over the roof of the building on which the work was being done, and that it was the duty of the decedent to choose the former method; and that where, instead of doing so, he selected the latter method, when he knew or ought to have known of the danger, he can not recover for injuries thus sustained, although his conduct in selecting the dangerous way may not have amounted to actual rashness. *Belk* v. *Lee Roy Myers Co.*, 17 *Ga. App.* 684 (87 S. E. 1089); *Central of Ga. Ry. Co.* v. *Moseley*, 112 *Ga.* 914 (38 S. E. 350); *Jackson* v. *Ga. So. & Fla. Ry. Co.*, 132 *Ga.* 127, 145 (63 S. E. 841); *Matthews* v. *R. & G. R. Co.*, 111 *Ga.* 711 (36 S. E. 926); *Southern Cotton-Oil Co.* v. *Skipper*, 125 *Ga.* 368 (5) (54 S. E. 110); *Moore* v. *King Manufacturing Co.*, 124 *Ga.* 576 (53 S. E. 107). The principle announced in these cases, that where an employee has two methods of performing the work of his employer, the one safe and the other unsafe, of which unsafeness he knows or ought to know, and selects the unsafe method and is injured, he can not recover of his employer, has no application to this case. In this case the appliance which was being used by the decedent was furnished him by his employer, who rented it from the defendant. The relation of employer and employee did not exist between the defendant and the decedent, but the defendant was the bailor of the appliance being used by the decedent, under a duty to furnish to the decedent's employer an appliance suitable for the uses intended and to see that the rented appliance was free from any secret defects which would render it unfit for the use intended. *Cooper* v. *Layson*, 14 *Ga. App.* 134 (80 S. E. 666); *Savannah Lumber Co.* v. *Davis*, 14 *Ga. App.* 233 (80 S. E. 535). The bailor warrants the soundness and suitableness of the thing bailed, and is liable for any injury or damage which may result from a latent defect of which the bailee has no knowledge and the consequences of which he could not avoid by the exercise of ordinary care. *Parker* v. *Loving*, 13 *Ga. App.* 284 (79 S. E. 77). It was the duty of the defendant to deliver the swinging scaffold to the employer of the decedent in such a condition that its employees who were to use the same could use it with safety. *Savannah Florida & Western Ry. Co.* v. *Booth*, 98 *Ga.* 20 (25 S. E. 928).

We can not agree with the contention that the defendant is not liable because the decedent chose the unsafe method of carrying out the work of his employer. We do not think that the evidence warrants such a holding. The evidence shows that the decedent was using the appliance furnished him by his employer to do the work, which appliance was rented from the defendant.

The defendant contends that if any negligence upon its part was shown, such negligence could have been avoided by the decedent by the exercise of ordinary care. The defendant asserts that even if it was negligent in using a guard-rail on this swinging scaffold that was cross-grained (but it contends that it was not negligent in so using a guard-rail), the undisputed evidence discloses that this condition was patent and easily discoverable by the decedent. While the evidence showed that the fact that the guard-rail timber had a cross-grained place in it, which rendered it weak and defective, and that this condition was apparent from an examination of the same, the evidence also tended to show that the rail was painted and that it took a close scrutiny or inspection to ascertain this. "A bailment is a delivery of goods or property for the execution of a special object, beneficial either to the bailor or bailee or both; and upon a contract, express or implied, to carry out this object and dispose of the property in conformity with the purpose of the trust." Civil Code (1910), § 3467; *Baugh* v. *MacDaniel,* 42 *Ga.* 641, 655. A bailment partakes of the nature of a contract of hiring. *Cabaniss* v. *Ponder,* 65 *Ga.* 134, 138. A contract of hiring is a contract by which one person grants to another the enjoyment of a thing during a certain time for a stipulated compensation. Civil Code (1910), § 3476. The obligations of the bailor in such a bailment are, among others, to keep the thing bailed in suitable order and repair for the purposes of the bailment, and a warranty that the thing bailed is free from any secret fault rendering it unfitted for the purposes for which it is hired. Civil Code (1910), § 3479. It has been held that while it is the duty of the bailor, under this section, to warrant against latent defects, much more is it the duty of the bailor to see that the bailed article is free from patent defects which render it unfit and unsuitable for the purposes for which it is hired. *Parker* v. *Loving,* supra. If the bailee knows of the defect or in the exercise of ordinary care ought to discover it, yet he uses the thing and injury results on ac-

count of the defect, he will be held to have waived his right to claim damages, since by the exercise of ordinary care he could have avoided the consequences of the bailor's neglect, but what amount of care the bailee ought to use to discover the defect is a question of fact for the jury. *Parker* v. *Loving,* supra.

One undertaking to furnish appliances for the use of others assumes a duty to furnish proper and safe appliances, and he may be liable to one lawfully using such machinery or appliance who is injured because of his failure to exercise proper diligence in this regard, even where the person using the appliance does not receive it directly from the person furnishing it, as where it is furnished to his employer. *Savannah &c. Ry. Co.* v. *Booth,* supra; 45 C. J. 849. One who supplies an appliance for such use by others that it is obvious to him that any defect will be likely to result in injury to those using it is liable to any person who, using the appliance properly for the purpose for which it is supplied, and without notice or warning of its defective condition, is injured thereby. This principle of law has been applied to defective scaffolds for workmen to work upon. Devlin *v.* Smith, 89 N. Y. 470 (42 Am. R. 311); Coughtry *v.* Globe Woolen Co., 56 N. Y. 124 (15 Am. R. 387); 45 C. J. 886. The above principle is applicable even though there is no contractual relation between the person furnishing the appliance and the person injured by reason of its defective condition. Torgesen *v.* Schultz, 192 N. Y. 156 (84 N. E. 956, 127 Am. St. R. 894, 18 L. R. A. (N. S.) 726); McCaffrey *v.* Morsberg &c. Mfg. Co., 23 R. I. 381 (50 Atl. 651, 91 Am. St. R. 637, 55 L. R. A. 822); Parry *v.* Smith, 4 C. P. D. 325. The maker or vendor of an article harmless in kind, but dangerous through defect, is under a duty to make the article carefully where its nature is such that it is reasonably certain to place life and limb in peril when negligently made; and where there is knowledge that the article will be so used by persons other than the purchaser, such maker or vendor is liable for an injury to a person resulting from a failure to perform this duty. 45 C. J. 891. A manufacturer of an article which is not inherently dangerous, but which is rendered dangerous by a defect therein, is liable for an injury to a third person arising from the defect, where he had knowledge of the defect (cases cited in note 50), and failed to give notice or warning thereof to the purchaser (cases cited in note 52), 45 C. J. 892, § 331. Conversely the

manufacturer is not liable where the purchaser had knowledge of the defect before the injury. Olds Motor Works v. Schaffer, 145 Ky. 616 (140 S. W. 1047, 37 L. R. A. (N. S.) 560, Ann. Cas. 1913B, 689). According to some authorities, actual knowledge by the manufacturer of the defect causing an injury is essential to liability on his part. Laudeman v. Russell, 46 Ind. App. 32 (91 N. E. 822); Lebourdais v. Vitrified Wheel Co., 194 Mass. 341, 343 (80 N. E. 482); Tipton v. Barnard &c. Mfg. Co., 302 Mo. 162 (257 S. W. 791); Bates v. Batey & Co. Ltd., 3 K. B. 351. But we think the better view is that the manufacturer may be liable for an injury arising from a defect which he ought to have discovered, such as one which he could have ascertained by proper care and attention, or by making a reasonable test or inspection. Krahn v. Owens Co., 125 Minn. 33 (145 N. W. 626); Schubert v. Clark Co., 49 Minn. 331 (51 N. W. 1103); Coakley v. Prentiss-Wabers Stove Co., 182 Wis. 94 (195 N. W. 388); Statler v. Geo. A. Ray Mfg. Co., 195 N. Y. 478 (88 N. E. 1063); Heckel v. Ford Motor Co., 101 N. J. L. 385 (128 Atl. 242, 39 A. L. R. 989); McPherson v. Buick Motor Co., 217 N. Y. 382 (111 N. E. 1050); Cashwell v. Fayetteville Pepsi-Cola Bottling Co., 174 N. C. 324 (93 S. E. 901); Dail v. Taylor, 151 N. C. 284 (66 S. E. 135). Where the alleged defect causing the injury was in the construction of the appliance rented to the employer of the decedent, the manufacturer of the appliance, who rented it to the employer, being under a duty to furnish a safe, suitable, and proper appliance, such defective construction of the appliance was misfeasance on the part of the manufacturer, and it was ipso facto chargeable with knowledge of the defective condition. It was its duty to know whether the appliance was constructed defectively or not. *Mayor &c. of Brunswick* v. *Braxton,* 70 *Ga.* 193; *Monahan* v. *National Realty Co.,* 4 *Ga. App.* 680, 685 (62 S. E. 127); *Bonita Theatre* v. *Bridges,* 31 *Ga. App.* 798, 800 (122 S. E. 255).

It is true that the decedent was under the duty to act as a conscious and responsible human being must act, as the situation and ordinary care require; but we do not think that the evidence in this case justifies a holding, as a matter of law, that the decedent utterly failed so to act. He was working upon an appliance furnished him by his employer, which was rented to the employer by the defendant, and which the defendant warranted to be safe and suitable for uses intended.

The presumption that the appliance was not defective, and when it is shown that it was, the further presumption that the employer had no notice or knowledge thereof and was not negligently ignorant thereof, according to the ruling made in *Belk* v. *Lee Roy Myers Co.,* supra, has no application to the facts of this case. In that case the action was between the employer and the employee, and in this case the action is between the person dependent upon an employee of a bailee injured by a defect in the thing bailed and the bailor.

We are of the opinion that under the facts of this case the decedent had a right to rely, at least to some extent, upon the statutory duty of the defendant to furnish a safe appliance suitable for the uses intended, in going upon this scaffold to perform the work of his employer.

It follows that we are of the opinion that the failure of the decedent to closely examine the piece of timber furnished by the defendant as the guard-rail of the scaffold for a place therein where the wood was cross-grained, would not, as a matter of law, be such a want of ordinary care on his part as to preclude a recovery by his mother for his death resulting from the alleged defective condition of the guard-rail, but that it was a question for a jury to determine under all the facts and circumstances of this case and under proper instructions from the court.

■ The defendant contends that the death of the decedent was caused by his working on the end of the scaffold, and that the breaking of the guard-rail was not the proximate cause of his injury. Although the defendant may be negligent in the performance or omission of a duty owed to the decedent, no liability would attach to the defendant unless such negligence was the proximate cause of the injury to the decedent. *Perry* v. *Central R. Co.,* 66 *Ga.* 746; *Southern R. Co.* v. *Pair,* 32 *Ga. App.* 378 (123 S. E. 142). In order to establish the proximate cause it is necessary that there be a causal connection between the negligent act and the injury. *General Fire Extinguisher Co.* v. *Daniel,* 25 *Ga. App.* 282 (103 S. E. 257). The negligent act or omission must have been such that without it the injury would not have happened. *Southern Ry. Co.* v. *Daughdrill,* 11 *Ga. App.* 603 (75 S. E. 925). The injury must have been the natural and probable consequence of the negligent act. *Brown Store Co.* v. *Chattahoochee Lumber Co.,* 121 *Ga.* 809

(49 S. E. 839); *Terrell* v. *Giddings,* 28 *Ga. App.* 697 (112 S. E. 914). But the determination of the proximate cause of an injury is for determination by the jury except in clear and unmistakable cases, and not for determination as a matter of law by the court. *Larkin* v. *Andrews,* 27 *Ga. App.* 685 (109 S. E. 518); *Gillespie* v. *Andrews,* 27 *Ga. App.* 509 (108 S. E. 906); *Rome Ry. &c. Co.* v. *King,* 30 *Ga. App.* 231 (117 S. E. 464). Where the proximate cause of an injury depends upon a state of facts from which different minds might reasonably draw different inferences, it is a question for consideration by a jury. 45 C. J. 1321, § 880.

"One who knowingly and voluntarily takes a risk of physical injury the danger of which is so obvious that the act of taking such risk, in and of itself, amounts to a failure to exercise ordinary care and diligence for his own safety, can not hold another liable for damages resulting from a hurt thus occasioned, although the same may be in part attributable to the latter's negligence." *City of Columbus* v. *Griggs,* 113 *Ga.* 597 (38 S. E. 953, 84 Am. St. R. 257). It can not be said as a matter of law that the fact that the decedent used the scaffold furnished by the defendant to his employer constituted the taking of a risk of physical injury, the danger of which was so obvious that it amounted to a lack of ordinary care and diligence for his own safety; nor can it be said as a matter of law that the act of the decedent in going at or near the end of the scaffold to do some work, when there was another on the scaffold to prevent it from tilting and to balance it, constituted such a lack of ordinary care and voluntary risk as would in and of itself amount to a failure to use ordinary care.

If the decedent had become overbalanced by a movement of the scaffold, four or five inches, which he caused by standing at or near the end of the scaffold and leaning over towards his left, and in an effort to right himself caught the guard-rail and put his entire weight upon it, a jury could find from the evidence in this case that he might not have fallen to the roof below had it not been for the splitting of the guard-rail, and that he caught the guard-rail after being overbalanced and was in the act of righting himself when the defective guard-rail put there for his protection by the defendant split off. A jury would have been authorized to find that a guard-rail constructed of straight-grained material might have been strong enough to prevent the decedent from fall-

ing. The determination and ascertainment of what constitutes negligence in a given case, except in a plain and indisputable case, is peculiarly a question for determination by a jury, and not for decision as a matter of law by the court. *White* v. *S. A. L. Ry. Co.*, 14 *Ga. App.* 139 (80 S. E. 667). The act of the decedent in losing his balance and grasping the guard-rail might have been the proximate cause of the injury, but a jury might find that it took the concurrence of the act of the defendant in placing a defective guard-rail that would easily split or break on this scaffold, and the act of the decedent in grasping it, to cause the injury complained of, and find that the act of the defendant in placing the defective guard-rail on the scaffold was the proximate cause of the injury. *Rollestone* v. *Cassirer,* 3 *Ga. App.* 161, 172 (59 S. E. 442).

Furthermore, if the decedent could not have avoided the injury caused by the defendant's negligence by the exercise of ordinary care, the defendant would not be relieved of its liability because the negligence of the decedent contributed in some way to the injury sustained. Civil Code (1910), § 4426; *Atlanta, Knoxville &c. Ry. Co.* v. *Gardner,* 122 *Ga.* 82 (49 S. E. 818). It is not sufficient to relieve the defendant of liability that the negligence of the decedent contributed to cause the injury complained of, unless such negligence of the decedent amounted to a proximate cause of the injury. *Davis* v. *Savannah Lumber Co.,* 11 *Ga. App.* 610 (75 S. E. 986); *Georgia Ry. &c. Co.* v. *Simms,* 33 *Ga. App.* 535 (2) (126 S. E. 850). Questions as to diligence and negligence, under section 4426 of the Civil Code, including contributory negligence, are questions peculiarly for the jury, except in plain cases. *Columbus Power Co.* v. *Puckett,* 24 *Ga. App.* 390 (100 S. E. 800). So we reach the conclusion that whether or not the decedent was guilty of failure to use ordinary care in working at or near the end of the scaffold, whether or not his negligence in that respect was the proximate cause of his injury, or whether or not the alleged negligence of the defendant in failing to provide a suitable guard-rail for the scaffold was the proximate cause of the injury, were all questions for determination by a jury under proper instructions from the court.

The defendant further contends that the guard-rail was subjected by the decedent to a use not intended by its being placed on the scaffold. The petition alleges that the guard-rail was for a

protection to any one using the scaffold if he became overbalanced, and that this was the purpose for which it was designed. There was evidence that the purpose of the guard-rail was to hold to to keep from falling from the scaffold. So we do not think that under the evidence in this case a finding was demanded that the decedent put the guard-rail to a use not intended. The jury were authorized to find from the evidence that if the guard-rail had been strong and suitable for the uses intended, the decedent might have regained his balance and kept from falling. The purpose of this rail on the scaffold was as a guard to protect workmen from falling from the same when they became overbalanced.

■ The defendant urges that the evidence did not show that the plaintiff in this case, the mother of the decedent, was dependent upon him for support, but that the voluntary contributions made by him to her were for such luxuries as she might desire to purchase. We can not agree with this contention of the defendant. The evidence showed that the plaintiff, her husband, who was sixty-three years old and did not work regularly on account of ill health, and their two unmarried sons, one of whom was the decedent, lived together; that the decedent gave the plaintiff about $50 monthly, in addition to paying board, which money was for her own comfort and for things that she might need; and that the plaintiff had been sick a long time, and the decedent had helped wait upon her. "Members of the same household who live by their common labor and its proceeds have a mutual dependence one upon another. Certainly so unless it be affirmatively shown that a particular member consumes as much, or more, of the common stock than he contributes to it. Even that would not be a conclusive test, for the services of a child to a mother or of a mother to a child may well be reckoned as contributing substantially to the support of the recipient far beyond any money value which the services may have, and the chief element of dependence may be in respect to personal service of this nature. . . In the case of laboring people some regard must be had to the probability of future dependence of an older member of the family upon younger ones." *Augusta Ry. Co.* v. *Glover,* 92 *Ga.* 132 (18 S. E. 406). Partial dependence upon the child, accompanied by contributions from him, is all that is necessary for a mother to be entitled to recover for the negligent homicide of her child. *Central of Ga. Ry.*

*Co.* v. *Henson,* 121 *Ga.* 462 (49 S. E. 278). In such a case the mother may recover, notwithstanding the father of the decedent is in life, in good health, and living with the family. *Fuller* v. *Inman,* 10 *Ga. App.* 680 (74 S. E. 287). However, in this case it is shown that the father was aged, that his health was not good, and that he was not working regularly.

■ While testimony as to what one thinks would have been the result of an occurrence had it happened in a particular way is not competent evidence, being merely conjectural and without probative value, evidence as to a custom and practice of persons using a swinging scaffold to go beyond the ratchets towards the end thereof to work, when another is on the scaffold with such a person, is admissible to show whether or not the decedent was guilty of lack of ordinary care in working near or at the end of the scaffold in this case, and it was error for the court to exclude the same when offered by the plaintiff. *Standard Oil Co.* v. *Reagan,* 15 *Ga. App.* 572 (84 S. E. 69) ; *Arrington* v. *Fleming,* 117 *Ga.* 449 (43 S. E. 691, 97 Am. St. R. 169). The testimony of the decedent's brother, who had many years experience with swinging scaffolds, that a guard-rail made of cross-grained wood was not a suitable guard-rail, was competent and admissible.

■ So under all the evidence in this case, and under the evidence improperly excluded by the court, we are of the opinion that it was a question for the jury to determine whether or not the defendant was negligent in furnishing the swinging scaffold to the employer of the decedent, with a cross-grained guard-rail, whether or not the death of the decedent was caused by his own lack of ordinary care, and whether even if the decedent was negligent in working upon the end of the scaffold, whether or not his working there or whether or not the defective condition of the guard-rail constituted the proximate cause of his death. If under any view of the evidence in this case, or legitimate inferences therefrom, the defendant would be liable for the death of the decedent, it was a question for the jury to pass upon, and we think that the court erred in dismissing the case.

*Judgment reversed. Jenkins, P. J., and Stephens, J., concur.*