JAMES L. TIPTON v. BARNARD & LEAS MANUFACTURING COMPANY, Appellant, and GUTTA PERCHA & RUBBER MANUFACTURING COMPANY and EXCELLO FEED MILLING COMPANY.

In Banc, January 4, 1924.

NEGLIGENCE: Manufacturer of Defective Machinery: Liability to Purchaser's Servant.  The manufacturer of defective machinery, who has no actual knowledge of such defect, and does not manufacture the machine ready to use or upon guaranty of good material or workmanship, but sells it in a knock-down state, to be fabricated by the purchaser, is not liable for damages to the servant of such purchaser for personal injuries due to such defects and received when said servant, after the machine was installed and failed to operate, inspected it and while in the act of inspection was injured. [Following Heizer v. Kingsland & Douglass Mfg. Co., 110 Mo. 605.]

Appeal from Buchanan Circuit Court.—*Hon. L. A. Vories*, Judge.

REVERSED.

*Charles J. Searle, Robert A. Brown* and *Richard L. Douglas* for appellant.

(1) The petition does not state a cause of action against the appellant. Heizer v. Mfg. Co., 110 Mo. 605; Kearse v. Seyb, 209 S. W. 635; Olds Motor Wks. v. Shaffer, 145 Ky. 616; Wood v. Sloan, 20 N. M. 127; Miller v. Mead-Morrison Co., 166 Wis. 536; Travis v. Rochester Bridge Co., 122 N. E. 1; Larrabee v. Des Moines Awning Co., 178 N. W. 373; Marshall Field v. French, 80 Ill. App. 78; Ziemann v. Mfg. Co., 63 N. W. 1021; Curtain v. Tomerset, 140 Pa. St. 76; Savings Bank v. Ward, 100 U. S. 207, 25 L. Ed. 621; Losee v. Clute, 51 N. Y. 494; Winterbottom v. Wright, 10 Mees. & W. 115; 1913B, Ann. Cas. 689 and note; 1914A, Ann. Cas. 877, note; Cooley on Torts (3 Ed.) 1486. (2) The court erred in overruling appellants' demurrer to the evidence offered at the close of plaintiffs' case, and renewed at the close of all the evidence in the case. (a) If the injured party by the exercise of ordinary care under the circumstances, might have avoided the consequences, but did not, the case is one of mutual fault, and the law will neither cast all the consequences upon the defendant, nor will it attempt any apportionment thereof. Zumault v. Sub. Ry. Co., 175 Mo. 311; Doerr v. Brg. Assn., 176 Mo. 556; 29 Cyc. 507, 508. (b) There is no evidence to sustain the essential averment against appellant that it had actual knowledge of the alleged defect in the spreader and switch-box arrangement. Authorities supra. (c) Even had appellant known of the alleged defect, plaintiff both pleaded and proved that it did not conceal the defect, and such concealment is an essential element of the right of a third person to recover. Authorities supra.

*Culver, Phillip & Voorhees* for respondent.

(1) The petition states a cause of action against appellant. MacPherson v. Buick Motor Co., 217 N. Y. 382; Young v. Waters Pierce Oil Co., 185 Mo. 666; Loehring v. Const. Co., 118 Mo. App. 174; Devlin v. Smith, 89 N. Y. 477; Bright v. Barrett & Record Co., 88 Wis. 299; MacPherson v. Motor Co., 211 N. Y. 382; Connors v. Great N. E. Co., 85 N. Y. S. 644; Quackenbusch v. Ford M. Co., 153 N. Y. Supp. 131. Even though the acts of both defendants were not committed at the same time, and independently of each other, both are liable. Trehmeyer v. Transit Co., 220 Mo. 639; Parker v. U. Ry. Co., 154 Mo. App. 126; Miller v. U. Ry. Co., 155 Mo. App. 528; Freeman v. Tel. Co., 160 Mo. App. 271. (2) As the appellant has not presented all the evidence to this court it cannot claim there was not sufficient evidence to go to the jury. Ross v. Ross, 83 Mo. App. 330; Nash v. Buick Co., 109 Mo. App. 604; Reed v. Peck, 163 Mo. 333. But the evidence in the abstract is amply sufficient to take the case to the jury. (a) If Soper and Townsend were negligent, their negligence cannot be imputed to plaintiff. Nonn v. Chicago Ry. Co., 83 N. E. 925; Adair v. Terminal Ry. Co., 220 S. W. 920; Moore v. Transit Co., 193 Mo. 418; Mitchell v. Polar Wave Ice Co., 227 S. W. 266. (b) There was sufficient evidence to show appellant knew of the defect in the elevator. Pierce v. Threshing Co., 116 N. W. 1104; Olds Motor Works v. Schaffer, 140 S. W. 1050. (3) The court did not err in admitting evidence as to subsequent repairs. The plaintiff claimed that the condition complained of was not the cause of the break in the elevator. In such circumstance it was proper to prove that the condition complained of was the cause by proving that when that condition was removed the elevator did not break or stop. 29 Cyc. 618; Texas Ry. Co. v. Anderson, 61 S. W. 424; Kulm v. Railroad, 111 Ill. App. 323; Brennan v. Lachot, 5 N. Y. 882, 14 Daley, 197, 6 N. Y. Supp. 278. If the appellant desired the court to limit the application

of this testimony it should have requested the court to do so. Brennen v. St. Louis, 92 Mo. 482.

SMALL, C.—This is a suit for personal injury by the plaintiff, who was superintendent of the defendant Excello Feed Milling Company at its plant in St. Joseph, Missouri. He was injured by the breaking of a moving belt in an elevator in said plant used in conveying employees and material, while standing on a step or platform attached to said belt and while being carried thereon from one floor to another. Said elevator had just been installed, and plaintiff's injury happened while he was riding upon it, to test it as to its safety in carrying persons. Plaintiff fell several stories and was injured.

Said belt was manufactured by the defendant Gutta-Percha & Rubber Manufacturing Company, a foreign corporation, which sold it to defendant Bernard & Leas Manufacturing Company, also a foreign corporation, which in turn sold to defendant Excello Company, a Missouri corporation. The Bernard & Leas Company also furnished plans, a small blue-print, and sold the material for the construction of said elevator in the knock-down, ready to be put together, to the defendant Excello Company, which constructed, erected and installed said elevator in its building under the superintendence of the plaintiff, as mechanical engineer.

The charge of negligence in the petition is, in substance, that said belt was defective and said materials for constructing said elevator were so negligently prepared and fabricated by the defendant Bernard & Leas Company, to the knowledge of all the defendants, that when put together, and said elevator was installed by defendant Excello Company, and used by the plaintiff, the flanges of the wheels attached to the steps on said belt came in contact with the bottom of a switch-box and spreader, connected with said elevator, which caused said belt to break and fall with the plaintiff and injure him.

In vacation, and before answering, the two defendants, foreign corporations, filed a petition and bond for removal to the United States court, which application was denied. Whereupon said defendants answered, setting up that the State court had no jurisdiction, because defendants had filed a proper bond and petition for removal to the Federal court, followed by a general denial; also a plea of contributory negligence on plaintiff's part, and that he assumed the risk in improperly assembling said elevator, and in not ascertaining, before getting on the elevator, that it had been properly installed and equipped and tested and was safe for the use intended.

The answer of the defendant Bernard & Leas Company contained the further defense: That under the contract between said defendant and the Excello Company it was provided that said defendant should "not be held liable for any pecuniary damages, except to make good, within a reasonable time, any unmerchantable defects which may have existed in said machinery when furnished."

After the trial had continued several days, and on November 17, 1919, when at the close of the plaintiff's evidence the defendant Excello Company so requested, the court gave an instruction in the nature of a demurrer to the evidence, and the plaintiff took a nonsuit with leave, as to said company. The two non-resident corporations then again filed a petition and bond for removal to the Federal court, which was again denied. Thereupon, the court sustained a demurrer to the plaintiff's evidence, as to the Gutta-Percha Company, and plaintiff took a nonsuit with leave as to said defendant.

The contract under which the Excello Company purchased the material for making the elevator from the Bernard & Leas Company was in writing. It consisted of a written order, signed by the Excello Feed Milling Company, by the plaintiff, James L. Tipton, mechanical superintendent. It was dated June 11, 1918, directed to

said Bernard & Leas Company, at Moline, Illinois.  The order stated: ''Please ship to the undersigned, the machinery and material mentioned in the annexed schedule, at and for the price of $4200, free on board cars at Moline, Illinois, or at factory where made.  We agree to pay you said sum . . . in installments as follows, to-wit:  Upon shipment of machinery $2100, thirty days after shipment of machinery $2100 .· . . It is understood and agreed that any changes made in said list, necessitating additional cost, shall be made at our expense.  You shall not be held liable for any pecuniary damages, except to make good within a reasonable time any unmerchantable defects which may have existed in said machinery, when furnished.  If requested, you are to recommend a mill-wright, or miller to supervise setting up or starting said machinery, and the undersigned promises to pay said mill-wright or miller and each of them his regular wages, plus his living expenses, from the time he leaves until he returns to his headquarters, as well as his round-trip traveling expenses.  It is expressly understood that there are no oral agreements, outside of this written order.  Yours respectively, Purchasers, Excello Feed Milling Company, by Jas L. Tipton, Mechanical Supt.''

The schedule described in detail the materials.  The acceptance was also in writing, and described the various articles and pieces of material connected with the elevator.  The acceptance was received by the Excello Company, July 17, 1918.

The elevator consisted of a rectangular iron frame of four posts of three-inch channel irons.  The structure was about 75 feet high.  A belt revolved over a pulley at the top and a pulley at the bottom.  There were steps attached to the belt to carry persons and material.  On the fifth floor there was attached to the spreader, which was intended to brace and hold the channel irons in place, a safety mechanism and switch-box.  The box was bolted underneath a plate that was a part of the spreador.  Attached to this box was a safety de-

vice, intended to automatically cut off the motor in the emergency, that any person coming up, if he got to this floor, should forget to get off, a plunger from the step would come out and engage the safety device and stop the motor and belt. If there was material, feed or something of that kind on the step, it would stop, and keep the sack from going over the top and falling down on the other side. The elevator was operated by a five horse-power electrical motor that transmitted power to the top pulley. There were ten steps approximately fifteen feet apart and sixteen by twenty inches. The steps were attached to iron wheels, bolted to the axle of such wheels, and the axle was bolted to the belt. The wheels ran in the channel irons to guide and keep the belt in place, when being operated. The flanges of these wheels extended beyond the channel irons, half or three-quarters of an inch. When the belt was moving, these flanges would reach the bottom of the box and be four inches above the plunger and thus strike the box, unless placed one-half or three quarters of an inch away from the channel iron, before the plunger could engage the safety device. The plunger would not come out, or be extended so as to engage the safety device unless there was some weight on the steps—some person or material. Plaintiff, besides being superintendent of the Excello Company, was an experienced mechanical engineer, and in charge of the remodeling of its feed mill at St. Joseph, and of the installation of new machinery therein. He purchased for said company the elevator in question in the knockdown, that is, purchased the materials for its construction, all supposedly fabricated and ready to be put together to form the elevator. The material so fashioned and fabricated was delivered some time prior to January 1, 1919, and on that day the elevator was erected and completed, except that the switch-box had not been connected with the motor, so as to automatically stop the motor. The plaintiff had formerly been a salesman of such elevators in the employ of the Bernard & Leas Company, and was perfectly familiar with the

working plans or drawings, and the construction and operation thereof. He supervised the erection of the elevator in this case, but the actual work of constructing and installing it was done by the mill-wrights, Soper & Townsend, employed by the Excello Comany. It was the duty of these mill-wrights, so plaintiff's evidence tends to show, to examine the workmanship and material, as they constructed the elevator, and if they found any part of it that would not fit or was not properly prepared or fabricated, to change it and see that it was proper, before using it in the work, so as to make a safe machine, or to report any such defect to the plaintiff as mechanical superintendent of the job. It was his duty, as mechanical engineer, as well as of Townsend, to test the safety of the elevator, after it was supposed to be completed, before putting it in use, for the purposes for which it was intended. An installation plan or blue print, on a very small scale, one-half inch to the foot, was furnished by Bernard & Leas Company, to assist in putting the parts together. This blue print did not indicate that there was any space between the switch-box or spreader, and the channel iron to which they were attached. But it was not a working plan or drawing showing exact details. The scale was too small to indicate, readily, fractions of an inch. It appears on its face simply to have been intended to show the general and relative location of the different parts. It was not used in locating the box, so Soper, who located and attached it, testified. But each piece of the material was supposed to be properly prepared by the Bernard & Leas Comany, with holes bored in the proper places, so as to fit and be placed, where intended, in the completed structure. It seems, however, according to plaintiff's evidence, that the holes for attaching the spreader and switch-box here in question were bored so close to the channel iron that the edge of the box and spreader came flush against the channel iron, when attached thereto, and did not leave any clearance for the flanges of the wheels attached to the elevator belt to pass said box and spreader, when said

belt was in operation. Soper placed the box and spread-
er where indicated by the holes bored in the material
for them, and left no clearance for the flanges of said
wheels. But neither Soper nor Townsend, who did the
work, nor the plaintiff who superintended it, realized
that there would be, or was, no such clearance until after
the accident. But both Soper and Townsend while
erecting the structure, knew that the flanges of said
wheels extended beyond the channel iron and that said
iron box came flush against it, and would have known,
had they taken thought, that such flanges would there-
fore strike the box and stop the elevator from operating.
On the morning of January 1, 1919, Soper started the
elevator after some difficulty. It operated for a few
minutes. The plaintiff and Townsend thereupon, in or-
der to inspect and test it, as to its safety for persons to
be carried thereon, each got upon a step to ascend. The
wheels on the elevator belt struck and caught on the
bottom of said box, just as Townsend reached the fifth
floor and stepped off. The said wheels being thus caught,
as plaintiff claims, by the weight of Townsend and plain-
tiff upon the steps, stopped the belt to which they were
attached, abruptly and suddenly, and the motor, which
operated the belt, being on, the belt broke apart, and
the plaintiff, who was on the steps below Townsend, fail-
ing to get off, was, with the belt, precipitated to the
basement some four stories below, and seriously injured.
The elevator was given no inspection or test to see if it
was safe before plaintiff and Townsend got on, but they
were engaged in inspecting and testing it as to its safety,
by riding on it themselves, at the time the accident oc-
curred. They could have put sacks of grain or feed on
the steps, and tested it that way, before getting on it in
person. Plaintiff testified that he thought it was all right,
that everything had been properly fabricated by Ber-
nard & Leas Company, and had been properly fitted to-
gether and installed. He knew nothing of the defective
location of the switch-box and liability of the wheels

to catch upon it. Plaintiff and Townsend testified that to get on the elevator themselves—Townsend saying, to risk his own life—was the proper way to test its safety for persons to ride upon, before permitting it to be used by others, the employees of the Excello Company. Plaintiff's evidence further showed that after the accident a larger blue print was furnished by the Bernard & Leas Company, and it showed the box and spreader should be set back from the channel iron, so as to afford clearance for said wheels on the elevator belt. And that afterwards they were thus set back, when the elevator was repaired, after plaintiff's injury, under the direction of Mr. Churchill, a manager of the Bernard & Leas Company, and that thereafter no trouble occurred in operating the elevator.

Plaintiff's evidence further tended to show that while the different parts of the elevator were made from working plans and drawings, at the factory of the Bernard & Leas Company, which the plaintiff, himself, had examined, and while plaintiff testified that the material was supposed to be fitted at the factory, and the manufacturer is supposed to know that all parts will fit when properly put together, he also testified: "I did not say, and do not say now, that the channel irons, the safety device, the spreaders, and the box had been tried out at the mill. Never saw one tested out at the factory." There was no evidence as to how or under what circumstances, the error, testified to by plaintiff's witnesses, in boring the holes, for the location of the switch-box and spreader, for this particular elevator, occurred, or that the Bernard & Leas Company had any actual knowledge, as distinguished from constructive knowledge or negligently failing to actually discover such error, before the accident happened. The defendant-appellant company produced no witness, as to how the accident occurred, but claimed below, and claims here, among other things, that it was physically impossible for Soper and Townsend to have seen the wheels strike and catch on the bottom of the switch-box. Therefore there is no evidence

that the switch-box was not properly located by the Ber-. nard & Leas Company. That the accident must have occurred by reason of the failure of the Excello Company, and the plaintiff, its superintendent, to connect up the safety device and switch-box with the motor, so as to shut the power off, which plaintiff's evidence shows they failed to do. That the result was the plunger on the steps caught on the safety device, but instead of shutting off the power, the power remained on, and the belt was thus broken. But plaintiff's witnesses testified that the plunger never reached the safety device, and could not, therefore, have caught upon it before the belt broke. That the bottom of the box on which the wheel caught was four inches below, where the plunger could catch on the safety device, and that they stooped down and plainly saw the wheels catch on and unable to pass the bottom of the box, and that this caused the belt to break.

Defendant's evidence tended to show that the millwrights of the Excello Company were guilty of negligence in failing to appreciate that the switch-box was dangerously placed, if placed as stated by them against the channel iron, and in failing to correct such defect, and that plaintiff and said mill-wright, Townsend, were guilty of negligence in personally riding on the elevator and testing it, as to its safety in that manner, instead of first loading the elevator with sacks of feed or other material to see if it was safe. An expert for defendant, not in its employ, stated that when such material is manufactured, it is manufactured according to office drawings, which show the design of each piece, their size and shape, where such belt hole is to go, and the method by which each is attached to the other. These things are worked out to the fraction of an inch. If this machine were designed and fabricated so that when the parts were put together as fabricated the flange of the roller or wheel would catch under that box so it would not get by there, that would be improper construction. The design would be defective, the machinery might be

dangerous. A man who designed it that way would know it was wrong by looking at his office drawings. If it was manufactured that way, in accordance with the design, he would know the defect was there; but those things occur, they are the personal element of machine shops.

Instructions submitting the respective theories of the parties, as to the law and the evidence, were given by the court, of some of which, given for plaintiff, appellant complains. It also complains of the refusal of the court to give a peremptory instruction in its favor. The jury returned a verdict of $12,000, on which judgment was entered for the plaintiff and against the appellant, from which it duly appealed to this court.

I. Heizer v. Kingsland & Douglass Manufacturing Co., 110 Mo. 605, a leading case, much cited and followed, opinion by BLACK, J., would seem to rule this case for appellant. In that case, plaintiff's husband was killed by the bursting of a cylinder in a thrashing-machine, which the defendant had sold to one Ellis, by whom the plaintiff was employed and who assisted Ellis in operating said machine. The defendant, in writing, warranted it to be of good material and workmanship, and agreed to supply any parts which might fail during a specified time, free of charge. After using it two or three days in thrashing, the cylinder flew into pieces, one of which struck Heizer, plaintiff's husband, above the eye, inflicting injuries from which he died. The cylinder was made of poor and weak and defective material, not properly tested by the defendant, which caused it to explode and injure the plaintiff. This court held that plaintiff could not recover, saying, at page 611, although an action in tort "often arises from a breach of a duty created by contract, but in such cases there must be some privity of contract between the defendant and the person injured. There being no privity of contract the suit cannot be maintained (citing many authorities) . . . But in many cases, the law imposes duties additional to those specified in the contract, and

sometimes independent of it. . . . As where the law casts a duty to use due care to third persons upon the manufacturer or vendor of dangerous goods, as in the case of poisonous drugs or explosive oils (citing authorities) . . . A recital of the salient facts in some of the cases before noted will the better enable us to say to which class this case belongs. In the leading case of Winterbottom v. Wright, 10 M. & W. 109, the defendant had contracted with the Postmaster-General to provide a mail coach for carrying the mail bags, and to keep the coach in repair and fit for use. . . . The coach broke down and injured the driver by reason of the negligence of defendant in failing to keep it in proper repair and fit for use. It was held the plaintiffs could not recover. Says Lord ABINGER: 'There is no privity of contract between these parties, and, if the plaintiff can sue, every passenger, or even any person passing along the road, who was injured by the upsetting of the coach, might bring a similar action. Unless we confine the operation of such contracts as this to the parties who entered into them the most absurd and outrageous consequences, to which I can see no limit, would ensue.' . . . In Necker v. Harvey, 49 Mich. 517, the defendant manufactured and put up in the factory of a soap company *an elevator* (italics ours), under a contract with the soap company that it would lift at least two thousand pounds. The elevator fell by reason of a defective shaft in three days, after it had been put in place, and injured a workman in the employ of the soap company. Judge COOLEY, speaking for the court, said: 'The statement of facts so far makes out no cause of action in favor of this plaintiff. It discloses a duty on the part of the defendant to construct an elevator which should lift two thousand pounds; but the duty was to the soap company, and not to anybody else. Nothing is better settled than that an action will not lie in favor of any third party upon a breach of this duty.' "

The learned judge then cites and quotes extensively with approval from Collis v. Selden, L. R. 3 C. P. 495,

where a contractor negligently hung a chandelier in a public house; Losee v. Clute, 51 N. Y. 494, where a manufacturer and vendor negligently constructed a steam boiler; Curtain v. Somerset, 21 Atl. 244, where a contractor negligently constructed a porch to a hotel. In all these cases, the court held the defendant not liable for an injury to third persons for the negligent construction. The learned judge continued, at page 614: "Wharton thinks the better reason for the rule is, that there is no causal connection between the negligence and the hurt; but be this as it may, the rule itself is well established in England and in the United States, and we think the case in hand comes within it. It is true the defendant must have known, when it made and sold the machine to Ellis, that other persons would be engaged in operating it; but this is no reason why defendant should be held liable to such other persons for injuries arising from the negligent use of poor material or for defective workmanship. Such knowledge must have existed in the cases which have been cited as asserting the rule, and would have been as good an argument against the rule in those cases as in the case in hand.

"We now turn to those cases where it is held that the vendor is liable for negligence to third persons, and Thomas v. Winchester, 6 N. Y. 397, is the leading one in the United States." The learned judge then quotes this and other cases where poison was negligently sold for harmless medicine in which the person who sold it was held liable to third parties, who used it. Distinguishing these cases, Judge BLACK says, page 615: "In these cases the articles sold were necessarily and inherently dangerous to human life, and they did not by their color or otherwise *disclose* their dangerous character, and, hence, the duty on the part of the vendor to make known to the vendee their true nature. A thrashing machine is not in and of itself dangerous, and there is no necessity of placing a label upon it. It speaks for itself, and discloses its uses and purposes as plainly as does a hand saw or the many other implements and machines

in daily use. We think the case in hand is entirely different from these just mentioned. . . . Thus far we have treated this action as founded on negligence. In such actions fraud or an intentional wrong is not an element. The distinction between negligence and intentional wrong is important in tracing down liability for the consequences arising therefrom. This distinction is pointed out with clearness in an article in the 16 Am. & Eng. Encyc. Law, 392, 434. Had the defendant sold this machine to Ellis, knowing that the cylinder was defective and for that reason dangerous, without informing him of the defect, then the defendant would be liable even to third persons not themselves in fault. [Sherman & Redfield on Negligence (4 Ed.) sec. 117.] As said in Wellington v. Oil Company, 104 Mass. 64: 'It is well settled that a man who delivers an article, which he knows to be dangerous or noxious to another person, without notice of its nature and qualities, is liable for any injury which may reasonably be contemplated as likely to result, and which does in fact result, therefrom, to that person or any other, who is not himself in fault.' But it seems out of place to pursue this inquiry further on this occasion; for there is no evidence showing or from which it can be fairly inferred that defendant knew the cylinder was in a dangerous condition. The plaintiff's evidence tends to show that the iron in the heads and bands of the cylinder was of poor quality, that there was want of care in testing the pieces of iron before joined into the cylinder and perhaps want of care in testing the machine when completed; but all this does not show that defendant knew this cylinder was defective or unfit for use. The cause discloses no motive whatever on the part of defendant for sending out a defective machine. The plaintiff's case tends to show no more than negligence, and an action based on that ground must be confined to the immediate parties to the contract by which the machine was sold. To hold otherwise is to throw upon the manufacturers of machinery, not necessarily dangerous, a liability which, in our opinion, the

law will not justify. The judgment in this case is, therefore, simply reversed. All concur.''

Among the many cases, citing and following the case of Heizer, decided by Judge BLACK, may be mentioned the following: Thomas v. Lane, 221 Mass. 451, where a landlord negligently made repairs on the demised premises, and the court held he was not liable for an injury to the tenant's invitee. Simons v. Gregory, 120 Ky. 124, where the manufacturer and vendor *of a passenger elevator* was held not liable to a third party injured by a defect in its construction, because an elevator is not inherently dangerous. Travis v. Rochester Bridge Company, 188 Ind. 85, where the contractor, after delivery of a bridge, was held not liable to the public for an injury from a defect therein when constructed. Miller v. Mead-Morrison Co., 166 Wis. 541, manufacturer of a defective coal-hauling device, held not liable to employee of purchaser for injury *unless manufacturer had actual knowledge, as distinguished from imputed knowledge,* that it was imminently dangerous, citing the Heizer and many other cases, on page 541. Daugherty v. Herzog, 145 Ind. 261, contractor not liable to third party injured by a falling wall. Galbraith v. Illinois Steel Co., 133 Fed. 487, contractor furnishing sprinkler company with defective steel structure for plaintiff's house, held not liable for injury to plaintiff's house by reason of such defect. Wood v. Sloan, 20 N. M. 138, contractor installing a washstand in office building for landlord, not liable for defect therein which injured a surgeon in the room where the washstand was installed. Ford Motor Co. v. Livesay, 61 Okla. 231, manufacturer of *automobile wheels or automobile* is not liable to third parties who have no contractual relations with him for negligence in their construction. Kuelling v. Lean Manufacturing Co., 183 N. W. l. c. 86-7, manufacturer not liable for injury to third persons, not in privity of contract with him, *unless guilty of fraud and deceit by concealing defects* so that they could not be seen by in-

302 Mo. Sup.—12.

spection—which was true in that case. Laudeman v. Russell & Co., 46 Ind. App. 32, manufacturer of defective boiler not liable to third parties for defect in construction *unless he actually knew of such defect. Not sufficient that he had constructive knowledge.* Southern Oil Co. v. Church, 32 Tex. Civ. App. l. c. 325, contractor furnishing defective derrick to be used in drilling oil wells, not liable to servant of party purchasing derrick injured by defect in construction thereof. Sammon v. Libby, 114 Ill. App. 258, manufacturer of mince meat, which is a food not inherently dangerous, not liable to purchasers from the manufacturer's vendee. Peters v. Johnson, 50 W. Va. l. c. 651, manufacturer not liable to third parties *unless he knows of dangerous defects—not sufficient that he is guilty of negligence in manufacturing and testing.* Huset v. Chase Thrashing Machine Co., 120 Fed. 865, doctrine announced that manufacturer of thrashing machine not liable for defect in construction to third parties, *unless the manufacturer knew the defect was imminently dangerous, and concealed such dangerous condition,* citing the Heizer Case, and many others. The decision was by the U. S. Court of Appeals, 8th Circuit. In Railway v. Merrill, 65 Kan. l. c. 448, the court quoted extensively from the Heizer Case, and held that a railway company which delivers a defective freight car to a connecting carrier is not liable to the employees of the latter for injury caused by such defect after the connecting carrier has inspected the car. That the loss of control over the car relieved the owner of the car from such liability. Here, appellant lost control of the material, after its delivery to the Excello Company. In McCaffrey v. Mossberg Co., 23 R. I. 381, a very elaborate opinion, the Supreme Court of Rhode Island, citing the Heizer Case, among others, held, that where a manufacturer built and sold a machine to a jeweler, whose employee was injured by a defective hook on the machine, the manufacturer was not liable for mere negligence—which we think, is all the evidence

tends to show in this case.  We cannot but regard the Heizer Case, cited and followed by each of the above authorities, and buttressed, as it was, upon leading American and English cases, announced a sound and salutary rule of law, and this court would not be justified in departing therefrom.  See also, 2 Cooley on Torts, pages 1486 et seq., and the many cases there cited to the same effect.

It seems to us that the facts in this case, shown by plaintiff's evidence, are much more favorable to the defendant than in the Heizer Case.  In the case at bar, the elevator was not furnished complete and ready for use, as was the thrashing machine in that case.

In this case, too, there was no written guaranty that the materials and workmanship were good, as in the Heizer Case.  But there was a suggestion, in the contract of purchase, that it might not be good, because it was provided, in such contract, that the manufacturer would make good any defect existing when furnished. There was no representation here, that the parts would be so perfectly fabricated, that there would be no danger in having them assembled precisely, as made, by non-experts.  But on the other hand, there was a suggestion that an expert would be required for that purpose, because there was a provision in the contract that the Bernard & Leas Company would recommend a mill Wright to install said elevator, if requested, by the Excello Company.  But in this case, as in the Heizer Case, there is no evidence that the manufacturer actually knew of the defects or actually knew it was sending out defectively and dangerously prepared material, when it sold and shipped to the purchaser the material to erect the elevator.  As in the Heizer Case, so here, the manufacturer's shopmen were simply guilty of negligence in failing to fabricate the material as designed by the working plans for its fabrication, shown by the larger blue print, put in evidence by the plaintiff.  There is no evidence they knowingly so failed, only that their failure

was negligent. This was not enough under the Heizer Case to charge the appellant with liability, as a manufacturer, to third persons, even had it constructed and delivered the elevator completed and ready for use, to the purchaser, which it did not do.

MacPherson v. Buick Motor Company, 217 N. Y. 382, apparently chiefly relied on by respondent, held the manufacturer and vendor of an automobile was liable to third parties for a defect in an automobile wheel, which the manufacturer bought from another manufacturer, on the ground that the automobile, and all its parts, were sold, ready for immediate use by all persons, without inspection and without any further work or labor thereon by others. This case would seem to be in conflict with the Heizer Case, and other cases, holding the automobile manufacturer not liable in such cases. [Ford Motor Company v. Livesay, 61 Okla. 231, supra, and cases cited.] But it is not in point. It is the exact antithesis of the case in hand, because, here the machine sold was sold by the manufacturer in the knock-down, *not* ready for use, and the *purchaser* was to construct, inspect, and test it, before it was or could be used by anyone, and the plaintiff's evidence shows, and respondent, in his brief, admits and claims it shows, that the purchaser negligently constructed and inspected it, because Townsend testified he actually observed, while he was constructing the elevator, that the switch-box was flush against the channel iron, and the flanges on the wheels extended beyond the channel irons, yet he did not correct or cause the defect to be corrected. Indeed, respondent, in his brief, contends that the lower court erred on account of such negligence on the part of Townsend in discharging the Excello Company on demurrer. Appellant's learned counsel also urge that the petition alleges and the evidence shows that the Excello Company had notice of such defect and therefore appellant was not liable under the Heizer Case in any event. Also, that the plaintiff, who was in charge of the work as

mechanical engineer, was guilty of contributory negligence, as a matter of law, in failing to properly inspect the material and workmanship, as the elevator was being constructed and in the manner in which he tested the safety of the elevator, after it was constructed. It also has other assignments of error. But having reached the conclusion that appellant had no actual knowledge of such defect, and did not manufacture and sell the elevator ready for use, but it was to be manufactured and made ready for use by the purchaser, and therefore appellant was not liable to third parties, it is unnecessary to consider any other contentions of appellant.

The judgment is therefore reversed. *Lindsay, C.,* concurs.

PER CURIAM:—The foregoing opinion by SMALL, C., is adopted as the opinion of Court in Banc. *Graves, David E. Blair* and *Walker, JJ.,* concur; *Ragland, J.,* concurs in result; *Woodson, C. J., James T. Blair* and *White, JJ.,* dissent.

Headnote 1: Negligence, 28 Cyc. 482.