BLON F. WILLEY, Appellant-Respondent, v. THE FYROGAS COMPANY, a Corporation, and RUUD MANUFACTURING COMPANY, a Corporation, Appellants, ROBERTSHAW-FULTON CONTROLS COMPANY, a Corporation, and ELMER W. CONE COMPANY, a Corporation, Respondents, No. 42690—251 S. W. (2d) 635.

Division Two, September 8, 1952.

Motions for Rehearing or to Transfer to Banc Overruled, October 13, 1952.

*Shughart & Thomson* and *Harry P. Thomson, Jr.,* for appellant
Ruud Manufacturing Co.

408

*Trusty, Pugh & Green* and *Guy W. Green* for appellant-respondent Blon F. Willey as to Ruud Manufacturing Company and Fyrogas Company.

412

*Albert Thomson* and *Johnson, Davis, Thomson, VanDyke & Fairchild* for appellant-respondent The Fyrogas Company.

*Hale Houts, Alvin C. Randall* and *Hogsett, Trippe, Depping, Houts & James* for respondent Robertshaw-Fulton Controls Company.

414

*Spurgeon L. Smithson* for respondent Elmer W. Cone Company.

BARRETT, C.—The plaintiff's husband, William H. Willey, was injured and died as the result of an explosion of propane gas in the basement of their home. The explosion occurred on August 24, 1948 as Mr. Willey attempted to relight the pilot light on an automatic hot water heater. The plaintiff, Mrs. Willey, claims that the gas escaped and accumulated in the basement by reason of a defective automatic cutoff valve on the heater. Because of their alleged negligence with respect to the defective automatic cutoff valve and Mr. Willey's resulting wrongful death Mrs. Willey instituted this action against the Ruud Manufacturing Company who assembled and manufactured the heater, Robertshaw-Fulton Controls Company, who manufactured and sold the valve to Ruud, The Fyrogas Company, a retailer, who sold the heater to Mr. and Mrs. Willey and installed it in their home, and Elmer W. Cone Company, who negotiated the sale of the heater from Ruud to Fyrogas. The negligence and liability of Ruud, the manufacturer of the heater, and Fyrogas, the retailer and installer of the heater, was submitted to a jury and upon that submission Mrs. Willey has recovered a judgment of $15,000 against these two defendants and they separately appeal from the judgment against them. At the close of all the evidence the trial court directed verdicts for Robertshaw-Fulton Controls who manfactured the valve and Elmer W. Cone Company who effectuated the sale of the heater from the manufacturer, Ruud, to the retailer, Fyrogas, and Mrs. Willey appeals from the judgments in favor of these defendants.

Before the essential merits of this appeal can be determined it is necessary to dispose of a preliminary question raised by the appellant Ruud, and the appeal of Mrs. Willey with respect to the Elmer W. Cone Company. Mr. and Mrs. Willey resided in Jackson County and the explosion and Mr. Willey's death occurred in Jackson County. The Fyrogas Company is a Missouri corporation with its office and residence in Clay County. Mrs. Willey instituted her action in Jackson County and originally the sole defendant was The Fyrogas Company. In her amended and second amended petitions Ruud, Robertshaw-Fulton and Elmer W. Cone were added and joined as defendants. Ruud Manufacturing Company and Robertshaw-Fulton Controls Company are foreign corporations with service agents in the City of St. Louis. Elmer W. Cone Company is a Missouri corporation with its residence and place of business in Jackson County and it is upon the fact of this defendant's residence that Mrs. Willey seeks to maintain the venue of her action in Jackson County. Mo. R. S. 1949, Sec. 508.010; State ex. rel. O'Keefe v. Brown, 361 Mo. 618, 621, 235 S. W. (2) 304, 306. Ruud does not question as a general proposition

or rule the appropriateness of the venue in this action. State ex rel. Columbia Nat. Bank v. Davis, 314 Mo. 373, 284 S. W. 464. It claims, however, that Mrs. Willey's petition did not state a cause of action against the Cone Company, that she in fact had no cause of action against that company and that the joinder of that company as a defendant was for the sole purpose of establishing venue in Jackson County and was fraudulent. It is urged, for these reasons, that the trial court erred in overruling its motion to quash the service before the trial and in overruling its motion to dismiss at the close of all the evidence when the trial court directed a verdict for the Elmer W. Cone Company. If these are the facts established by the record and Ruud's arguments are sound in the respects urged it would follow, of course, lacking proper venue, that the Circuit Court of Jackson County did not have jurisdiction of the defendant Cone and could not thereby acquire jurisdiction over the complaining nonresident defendant Ruud. State ex rel. Thompson v. Terte, 357 Mo. 229, 207 S. W. (2) 487; Diehr v. Carey, 238 Mo. App. 889, 191 S. W. (2) 296.

Ruud's initial motion to quash was verified by the affidavit of its counsel, there was [638] no evidence upon the motion, and hence there was no proof of fraudulent joinder unless it can be found as the fact that the plaintiff's petition against Cone, the resident defendant, wholly failed to state a claim upon which relief could be granted. State ex rel. Thompson v. Terte, 357 Mo., l.c. 240, 207 S. W. (2) l.c. 492; Diehr v. Carey, supra. And, essentially, that is what Ruud claims, that the petition fails to state a cause of action against Cone and in fact that the plaintiff did not and could not have a cause of action against that defendant. With reference to Elmer W. Cone Company the plaintiff alleges that Cone is the agent and representative of Ruud Manufacturing Company in Missouri, that it had the Ruud heater and valve in its control and possession and sold and delivered the heater to Fyrogas for the purpose of its being installed and used as a water heater and "that said defendant knew that if said valve was not in proper working condition so as to automatically close the gas passage way of the pilot light, it would not accomplish the safety results for which it was manufactured and intended * * *." It is then alleged that Cone "negligently sold said water heater for the use herein described while it was in said unsafe and dangerous condition, and negligently failed to use ordinary care to inspect said valve before so placing the valve and heater in the hands of The Fyrogas Company to be installed and used in the home of this plaintiff, and negligently failed to warn or inform The Fyrogas Company of such danger."

The petition does not set forth with accuracy and precision all the essential elements of a cause of action against Cone, but as

against the bare claim that it wholly fails to state a claim upon which relief could be granted the petition is certainly sufficient. The petition does not show, upon its face, by its allegations that the Cone Company had discharged any obligation or duty it may have had to the plaintiff, and that, therefore, the plaintiff did not and could not have a cause of action against the resident defendant as was the case in Winter v. Commercial Bank, (Mo. App.) 238 S. W. 833. It is not the rule, merely because Cone is a distributor or vendor, that Mrs. Willey could not in any and all circumstances have a cause of action against Cone as well as against the other defendants. State ex rel. Dutcher v. Shelton, 249 Mo. 660, 156 S. W. 955. There could be joint and several liability in this case as to all the defendants; such liability is not defeated by the mere fact that the negligence of one defendant preceded or followed that of another defendant in point of time. 65 C. J. S., Sec. 102, p. 639; State ex rel. C. H. Atkinson Paving Co. v Aronson, 345 Mo. 937, 138 S. W. (2) 1. As will appear more certainly in connection with Cone's ultimate liability, this is not an instance in which "from the existing state of the law and the facts it is clear that the resident defendant can be liable to the plaintiff on no reasonable legal ground, and that plaintiff knew or must be presumed to have known such to be the case," and that joinder of the resident defendant was "pretensively made," as it plainly appeared in Diehr v. Carey, supra. The plaintiff did not voluntarily dismiss her action as to Cone and the fact that the trial court, in the circumstances, appropriately directed a verdict for the defendant Cone at the close of all the evidence does not establish in and of itself that Mrs. Willey could not have had, in any and all events, a cause of action against that defendant or that its joinder as a party was fraudulent or pretensive. Annotation 93 A. L. R. 949; 67 C. J., Sec. 172, p. 110. It follows, in the circumstances of this case, that the trial court did not err in overruling Ruud's motions to quash the service and to dismiss for lack of proper venue.

The heater involved in this explosion was one of a consignment of two heaters shipped by Ruud from Kalamazoo to Cone in Kansas City. The heaters came in crates, each heater covered with a paper bag, and the intake and outlet holes on the automatic cutoff valve were covered with tape. While the heaters were shipped to Cone they were never in Cone's place of business but were stored in the Central Storage and Warehouse Company. It was admitted "that Elmer W. Cone Company was agent in this territory, that as manufacturer's [639] agent for the sale of Ruud heaters in this territory, as such agent for Ruud Manufacturing Company it effected a sale from Ruud to The Fyrogas Company of the heater in question." Fryrogas paid the drayage on this heater from the warehouse to its place of business

and the heater was received by it in the original crate. The invoice for the heater was from Ruud to Fyrogas, and Fyrogas paid Ruud for the heater by a check to Ruud in the sum of $137.21, Cone receiving a sales commission of $6.70. Mrs. Willey says that Cone was "the exclusive sales representative for the Ruud heater in all or parts of nine states" and that it had "physical control, at least by constructive possession in the warehouse" of the heater and that removal of the tape from the inlet port would have revealed the defect to anyone at the Cone Company. There was a written contract between Ruud and Cone but the contract was not offered in evidence and, other than Cone's admission, there is no evidence as to the precise nature of the relationship between Ruud and Cone. In his opening statement Cone's Counsel mentioned the contract and said that Cone "became distributor or manufacturer's agent for Ruud in this territory." In any event Cone's liability with respect to the heater is not that of a manufacturer or a retailer. The admission was that it was a "manufacturer's agent" and that as such agent it effectuated a sale of the heater from Ruud to Fyrogas, and so whatever the precise or technical nature of their relationship the liability of Cone is that of an intermediate vendor. So far as described or defined by what the record shows Cone in fact did, effectuated a sale of the heater from Ruud, the manufacturer, to Fyrogas, the retailer, if it is necessary to characterize Cone's relationship to the transaction, it was a wholesaler.

The gas heater was not an "inherently dangerous" article, it was "imminently dangerous" if defectively constructed (annotation 42 A. L. R. 1243, 1244) and Cone's liability, as indicated, is that of an intermediate vendor. "A vendor of a chattel manufactured by a third person, who neither knows nor has reason to know that it is, or is likely to be, dangerous, is not subject to liability for harm caused by the dangerous character or condition of the chattel even though he could have discovered it by an inspection or test of the chattel before selling it." Revised Sec. 402 Restatement, Torts. In the comments on this section the reasons for the present rule and the changes are set forth and the illustrative example given is this: "A, a wholesale distributor, sells to B, a retail vendor, who, in turn, sells to C, a defective gas heater, obtained from a reputable manufacturer and which A and B believed to be in perfect condition although they have not inspected it. The heater when used emits poisonous fumes, harming C. Neither A nor B is liable to C." 1948 Supplement, Restatement Of The Law, p. 717. So, even though it be assumed that the heater was defective while it was in the warehouse and when Cone effectuated the sale to Fyrogas, and that Cone could have discovered the defect by a proper inspection, it was an essential prerequisite to Cone's liability in this action that it knew or had reason to know of the dangerous character of the heater. In this case it is unnecessary

to consider or discuss any other essential element of the rule concerning the liability of this defendant. There is no evidence from which it is a possible inference that Cone knew or had reason to know (Restatement, Torts, Secs. 388, 392-393, 399) that the heater was defective and therefore imminently dangerous when put to the use for which it was intended, hence, upon this record, there was no liability upon Elmer W. Cone Company and the trial court properly directed a verdict for that defendant at the close of all the evidence. Winkler v. Macon Gas Co., 361 Mo. 1017, 1026, 238 S. W. (2) 386, 392; Zesch v. The Abrasive Co. of Phila., 353 Mo. 558, 564, 183 S. W. (2) 140, 143; Roettig v. Westinghouse Electric & Mfg. Co., 53 F. Supp. 588, 592; Shroder v. Barron-Dady Motor Co., (Mo.) 111 S. W. (2) 66.

Robertshaw-Fulton Controls Company of Linwood, California manufactured the automatic, "Grayson," cutoff valve and sold [640] it to the Ruud Manufacturing Company in Michigan. An employee of Robertshaw-Fulton's, called as a witness by Fyrogas, testified that his company tested and inspected every valve during and after manufacture. A cap, called a "G" cap, was placed over the valve stem, the completed valve was painted with aluminum paint, the intake and outlet holes were covered with tape and the wrapped valves were shipped to Ruud in packages containing one dozen valves. Ruud manufactured the heater and installed the valve involved here in August 1946. There are no identifying marks or serial numbers on this valve certainly and positively indicating that Ruud tested this particular valve. Ruud's evidence, however, was that all heaters and valves were inspected and tested during and after manufacture, although Ruud did not remove the "G" cap and look at the position of the valve stem. Ruud sold the heater to Fyrogas on September 4, 1946 and Fyrogas in turn sold the heater to Mr. and Mrs. Willey on the 21st day of September 1946 and a Fyrogas employee delivered the crated heater to the Willey home and installed it on the 24th day of September 1946. He uncrated the heater and with the help of Mr. Willey and Mr. Willey's workman carried it to the basement. It was this employee's testimony that he inspected and tested the heater and particularly that he tested the automatic cutoff valve and explained the tests and the operation of the heater to the Willeys. The heater was in operation in the Willey's basement from September 24, 1946 until August 24, 1948, twenty-three months. During that period of time one of the tanks became empty on fifteen separate occasions causing the burners to become extinguished and necessitating the relighting of the pilot light. It was necessary to switch tanks when one of them became empty and Fyrogas switched the tanks and delivered the Willeys fifteen tanks of propane in the twenty-three months of the heater's successful operation.

Robertshaw-Fulton Controls, for whom the trial court directed a verdict, and Ruud Manufacturing Company, one of the appellants from Mrs. Willey's judgment, do not question the applicability of the modern and what has come to be accepted as the general rule of liability with respect to manufacturers of articles imminently dangerous by reason of defects and negligence in their manufacture. Annotation 164 A. L. R. 569; MacPherson v. Buick Motor Co., 217 N. Y. 382, 111 N. E. 1050. The essence of the rule is set forth in Sections 394 and 395 Restatement, Torts, particularly Section 395, "A manufacturer who fails to exercise reasonable care in the manufacture of a chattel which, unless carefully made, he should recognize as involving an unreasonable risk of causing substantial bodily harm to those who lawfully use it for a purpose for which it is manufactured and to those whom the supplier should expect to be in the vicinity of its probable use, is subject to liability for bodily harm caused to them by its lawful use in a manner and for a purpose for which it is manufactured." In the MacPherson case Mr. Justice Cardozo was not concerned with the liability of the manufacturer of the component parts of the completed article, but it is now recognized that "A manufacturer of parts to be incorporated in the product of his vendee or others is subject to liability under the rule stated in this Section, if they are so negligently made as to render the products in which they are incorporated unreasonably dangerous for use." Comment Restatement, Torts, Sec. 395, p. 1078; Smith v. Peerless Glass Co., 259 N. Y. 292, 181 N. E. 576. Ruud and Robertshaw contend since Fyrogas, and in the case of Robertshaw Ruud, made other and further tests and the heater was in successful use for twenty-three months that these general rules are inapplicable to their liability in this case. Their contentions are asserted in various ways, affirmatively and negatively. Ruud urges since it was the practice and custom of the retailer, Fyrogas, to make further tests and because in fact it made a "functional" test of the automatic cutoff valve that it had a right to rely upon the practice, custom and fact and in such instances there is no liability upon the manufacturer for discoverable defects. [641] Robertshaw contends, since Ruud made other and further tests, that the general rule is inapplicable, that there is no duty or liability upon the manufacturer of an imminently dangerous article unless it is "sold by the manufacturer with knowledge that it would be used without any new tests." Both manufacturers point to the fact that the heater was in the Willeys' possession and successfully used for twenty-three months and, therefore, they assert that the fact affirmatively demonstrates that the heater and the valve were not imminently dangerous when they were manufactured and left their control and possession.

There are instances in which tests by others may have some bearing on the manufacturer's liability. For example, in Tipton v. Barnard & Leas Mfg. Co., 302 Mo. 162, 257 S. W. 791, the elevator was not furnished complete and ready for use, the supplier furnished the plans and specifications and sold the materials for the construction of the elevator and the buyer installed and tested the elevator. The case is plainly put on the ground that the elevator was not furnished complete and ready for use, hence there was no duty upon the manufacturer to make tests after it was erected by the buyer. In the case of In re New York Dock Co., 61 F. (2) 777, the charterer of a pile driver inspected and rigged the pile driver for use and so it was held that the owner of the pile driver was not liable to the charterer's employee injured by a defect that was not latent. In deciding the MacPherson case Mr. Justice Cardozo did not make the fact of further tests by others a part of the rule or a limitation upon the manufacturer's ultimate liability. The retailer's duty to test or his negligence in making tests certainly does not discharge the manufacturer's duty to also test and inspect and is not a defense to the manufacturer's negligence in constructing the article or in failing to properly test and inspect it. Sider v. General Electric Co., 197 N. Y. S., 98, 103; Pierce v. Ford Motor Co., 190 F. (2) 910. The failure of the vendee to properly inspect and test is within the foreseeable risk of the manufacturer. Foley v. Pittsburgh-Des Moines Co., 363 Pa. 1, 68 Atl. (2) 517, 529. It is for these reasons, no doubt, that the rule has become a part of the Restatement of the Law of Torts, Revised Sec. 396, "A manufacturer of a chattel is subject to liability under the rules stated in §§ 394 and 395, although the dangerous character or condition of the chattel is discoverable by an inspection which any other person is under a duty to the person injured to make." As to Robertshaw-Fulton the comment on this section is that "The rule stated in this Section is also applicable where the manufacturer of raw material or of a part, such as an automobile wheel, sells it to another manufacturer who is under a duty to inspect it, before incorporating it in his product." 1948 Supplement to Restatement, p. 706.

The fact of the use of an article over a period of time may demonstrate that the article was not "imminently dangerous" when manufactured or even that it was not defectively or negligently manufactured. It all depends on the nature of the use and whether the use is such as would reveal the defect complained of, or whether the use contradicts the claimed "imminently dangerous" character of the article. As Mr. Justice Cardozo said of the balance wheel on the circular saw, "The risk can hardly have been an imminent one, for the wheel lasted five years before it broke." MacPherson v. Buick Motor Co., supra. So it was with the manifold on the ammonia

compressor, it did not crack until after eight months' continuous use and that use tested the defect complained of and contradicted its claimed imminently dangerous character. Tayer v. York Ice Mach. Corp., 342 Mo. 912, 119 S. W. (2) 240. For similar illustrations see Lynch v. International Harvester Co., 60 F. (2) 223; Gorman v. Murphy Diesel Co., (Del.) 29 Atl. (2) 145. In this case the water heater was successfully used for twenty-three months but in all that time, until the 24th day of August 1948, the effectiveness of the automatic cutoff valve was not tested by its use. There were fourteen occasions when a tank became empty and it was necessary to switch tanks and relight the pilot [642] light but on each occasion it happened that Mr. Willey was home and, according to his wife, within a few minutes, before a sizeable quantity of gas escaped, relighted the pilot and thus the efficacy and safety of the automatic cutoff valve was not tested or demonstrated. One of the tanks became empty on August 23rd, as Mrs. Willey was preparing breakfast, and she went outside and turned on the other tank. That night the Willeys went to a picture show, Mrs. Willey forgot the empty tank and the unlighted pilot light until the following morning when Mr. Willey was about to bathe, and if there was a defect in the automatic cutoff valve the use of the heater had not been such as to reveal the defect until Mr. Willey attempted to relight the pilot light on this occasion. In these circumstances the fact that the heater and valve had been out of the manufacturer's possession and used for twenty-three months did not demonstrate as a matter of law that the valve was not imminently dangerous. Reed & Barton Corp. v. Maas, 73 F. (2) 359; Rulane Gas Co. v. Montgomery Ward & Co., 231 N. C. 270, 56 S. E. (2) 689. Consequently, for neither of these two reasons, tests by others and the twenty-three months' use of the heater, could it be declared as a matter of law that Ruud and Robertshaw-Fulton owed no duty to the Willeys, and hence that there could be no liability as to them within the meaning of the general rule.

It would serve no useful purpose to consider and determine in detail whether the plaintiff is estopped to make certain contentions, or whether Ruud or others adopted and are bound by some theory advanced by the plaintiff, or whether this party or that party is guilty of negligence as a matter of law, and numerous other extraneous and collateral issues urged by the parties. It is enough to say that they have all been carefully considered and are of but little value in the determination of this case. It goes without saying that a jury's verdict may not be based upon mere speculation or conjecture, but neither may the jury be deprived of its power and function of reasoning upon the evidence and drawing inferences (Van Brock v. First Nat. Bank in St. Louis, 349 Mo. 425, 431, 161

S. W. (2) 258, 261), and, if there is substantial, probative evidence to support either the plaintiff's cause of action or the defenses the weight and credibility of the evidence, and ultimately its meaning, are necessarily for the jury's consideration and determination. Cluck v. Abe, 328 Mo. 81, 40 S. W. (2) 558. The decisive and essentially meritorious question upon this appeal is whether there is substantial, probative evidence from which Ruud's and Robertshaw-Fulton's negligence could be found under the modern general rule. Annotation 164 A. L. R. 569; Zesch v. The Abrasive Co. of Philadelphia, supra.

The day of the explosion, August 24, 1948, fire insurance adjusters were called and they or their representatives examined the basement and the heater and tested the gas lines for leaks. They found no leaks in the gas lines and the following day representatives of the fire insurance companies, an engineer, a plumber and others made further tests of the lines and found no leaks. The heater was inspected and photographed. In the course of these tests it was determined, according to a plaintiff's witness, that the safety valve was letting gas through, which it would not have done had the automatic cutoff valve been functioning properly. The heater was removed from the basement and taken to Garney's Plumbing Shop. On August 27, 1948, representatives of various insurance companies, an employee of Ruud's, a Fyrogas employee, lawyers and others met at Garney's for the purpose of examining and testing the heater. There were more photographs of the heater and particularly of the automatic cutoff valve, and finally the "G" cap over the valve stem was removed. When the cap was removed the spring, designed to hold the valve stem in place, fell out and it was plain to everyone present that the valve stem was not being held in its socket by the spring and was "out of plumb" so that the automatic cutoff valve could not possibly function properly and was unsafe.

The defendants did not question the fact of the dangerous character of the valve in [643] the condition in which it was found at Garney's. They claimed that they had carefully and properly manufactured, tested, assembled and installed both the valve and the heater and that they were not guilty of negligence in defectively manufacturing or inspecting them. And it may be said here that their evidence supported their claims. Their defense and explanation of the valve's condition as revealed by the examination at Garney's was that someone, either Mr. Willey or a plumber, had removed the "G" cap after installation and improperly reassembled the valve. The defendants attempted to show by photographs and from their witnesses that there were wrench marks on the "G" cap, that the aluminum paint which normally sealed the cap to the valve opening had separated and left a crack, indicating that the valve had been opened and tampered with. The plaintiff likewise sought to demonstrate that the cap did not have marks on it, that the paint seal was not

broken, that there had been no occasion to open the valve and that no one had tampered with it. Upon this conflicting evidence the jury has impliedly found that the valve was not tampered with after it was installed. Pierce v. Ford Motor Co., 190 F. (2) l.c. 912.

As indicated, the Fyrogas employee who installed the heater testified in detail to the care he exercised in installing the heater and in testing the valve. He did not remove the "G" cap or take the valve apart. His tests were "functional." He removed the tape from the inlet and outlet ends of the valve and said that he looked into it and that the valve was properly assembled. He lighted and relighted the burners and listened for the clicking sound which indicated that the automatic cutoff valve was functioning properly. He said that he explained all these things to the Willeys and showed them how it operated but Mrs. Willey and the Willeys' workman denied that they or the Fyrogas man heard the clicking sound and Mrs. Willey testified that there was always a "puffing" sound when the pilot light was relighted, indicating that some gas always escaped through the valve. If the heater was properly installed and the Fyrogas employee thought, from the tests he made, that the valve was functioning properly and if it was not tampered with after it was installed, the valve must have been in the defective condition in which it was found at Garney's when it was delivered in the crate to Fyrogas, hence when it was manufactured and assembled in the heater. Rulane Gas Co. v. Montgomery Ward & Co., 231 N. C. 270, 56 S. E. (2) 689; Trowbridge v. Abrasive Co. of Phila., 190 F. (2) 825; Pierce v. Ford Motor Co., supra; O'Donnell v. Geneva Metal Wheel Co., 183 F. (2) 733; Reed & Barton Corp. v. Maas, 73 F. (2) 359; Sheward v. Virtue, 20 Cal. (2) 410, 126 P. (2) 345; Jacobs v. Frank Adams Elec. Co., (Mo. App.) 97 S. W. (2) 849. The mere fact that the automatic cutoff valve did not properly function on this one occasion is not in itself sufficient to show negligence on the part of the manufacturers but it certainly "challenges attention, and is a circumstance to be considered along with others." Goullon v. Ford Motor Co., 44 F. (2) 310, 311. All the experts, including Ruud's witness, said that the valve could not pass the tests to which it was subjected if the valve stem was out of position or in the condition in which it was found at Garney's. The defendants' explanations, the care with which they manufactured the heater and the valve and the tests they made are not conclusive. O'Donnell v. Geneva Metal Wheel Co., 183 F. (2), l.c. 737. Whether Robertshaw-Fulton, Ruud and Fyrogas made the tests they claimed to have made and the efficaciousness of the tests, each test was different in character and degree, was for the jury's determination. Zesch v. The Abrasive Co. of Philadelphia, supra; Riggin v. Federal Cartridge Corp., 240 Mo. App. 206, 204 S. W. (2) 94; McCormick v. Lowe & Campbell

Athletic Goods Co., (Mo. App.) 144 S. W. (2) 866. The required finding of the defect, the tests, proximate cause and ultimately the liability of the manufacturers were for the jury's determination, there was evidence from which they [644] could be found. Marsh Wood Products Co. v. Babcock & Wilcox Co., 207 Wis. 209, 240 N. W. 392; Heckel v. Ford Motor Co., 101 N. J. L. R. 385, 128 Atl. 242. It necessarily follows that the trial court erred in directing a verdict for Robertshaw-Fulton Controls Company, the manufacturer of the valve, but the court did not err in not directing a verdict for Ruud Manufacturing Company, the manufacturer of the heater.

The only instruction specifically submitting and hypothesizing Ruud's liability is instruction three, as follows:

"You are instructed by the Court that it is conceded that the Ruud Manufacturing Company installed the control valve in question on the heater in question and that such valve was installed on the heater in question to be used only with liquified petroleum gas, and that the Ruud Manufacturing Company shipped said heater from its place of business in Kalamazoo, Michigan, to Elmer Cone Company; that is was so equipped and sent to Kansas City, Missouri to be sold to and to be used by a customer using liquified petroleum gas.

"So you are instructed by the Court that if you believe and find from the evidence that when The Ruud Manufacturing Company shipped the heater to Kansas City, Missouri, and that when it was installed in the Willey basement by the Fyrogas Company, the automatic cut-off valve on the heater was inoperative and in the position it was found to be in after the explosion in the basement of the Willey home, then you are instructed that the defendant, The Ruud Manufacturing Company was guilty of negligence, and if you so find from the evidence, and;

"Further find from the evidence that as a direct result of such negligence, if any, gas could and gas did escape into the basement of the Willey home and in such quantity as to be ignitible, and to create a dangerously explosive condition, if you so find, and that by reason thereof it became ignited and Mr. Willey lost his life, then it would be your duty to return a verdict for Mrs. Willey and against the defendant, The Ruud Manufacturing Company."

The appellant Ruud contends that the instruction is prejudicially erroneous and that the trial court erred in refusing to sustain its motion for a new trial because of the giving of the instruction. It is asserted that the instruction is prejudicially erroneous in that it assumed the ultimate controverted issue of Ruud's negligence, failed to require a finding that the facts hypothesized constituted negli-

426

gence and wholly failed to require a finding that Ruud failed to·
exercise ordinary care in the inspection of the valve, one of the
essential issues in the case. Against these objections Mrs. Willey
urges that Ruud tried the case upon the sole factual theory that the
valve was put in its imminently dangerous condition after it was
installed, that by referring, in its sole cause instruction, to plaintiff's
instruction three it adopted and joined in trying and submitting the
case on the theory submitted by the plaintiff and therefore may not
now complain of the instruction. In addition, the plaintiff urges,
under the uncontradicted and undisputed testimony, that Ruud
was guilty of negligence as a matter of law if it sold the heater with
the valve in the imminently dangerous condition which caused the
explosion.

What we have previously said upon the merits of the cause is
probably sufficient to dispose of the plaintiff's contentions with re-
spect to the instruction. There is no violation of a statute or ordinance
involved in this case (Trusty, Constructing and Reviewing Instruc-
tions, Secs. 5 and 7), the facts are not undisputed (Jones v. Central
States Oil Co., 350 Mo. 91, 164 S. W. (2) 914) and, as has been
indicated, Ruud was not guilty of negligence as a matter of law, and
so it was necessary that the instruction submit the facts as shown
by the evidence and require the jury to determine whether the
hypothesized facts constituted negligence. Swain v. Anders, 349
Mo. 963, [645] 973-974, 163 S. W. (2) 1045. Although it is not a
model in all respects, an instruction properly setting forth these
elements is contained in McLeod v. Linde Air Products Co., 318 Mo.
397, 1 S. W. (2) 122. Ruud did not seek, by its instruction, to
employ an erroneous theory of the law to its advantage, and it may
not, be said that it invited, or adopted, or induced either the plaintiff
or the court to adopt an erroneous theory. Millhouser v. Kansas
City Pub. Serv. Co., 331 Mo. 933, 55 S. W. (2) 673; Kelly v. Lahey,
(Mo. App.) 232 S. W. (2) 177. Aside from the fact that this
instruction, impliedly at least, assumes certain facts and does not
clearly and plainly require the jury to find that the hypothesized
facts constitute negligence (Hilton v. Mudd, (Mo. App.) 174 S. W.
(2) 31; Harmon v. Plapao Laboratories, (Mo. App.) 218 S. W.
701), it does not even mention the very important question and
issue of inspection and whether Ruud violated its duty in this respect.
Zesch v. The Abrasive Co. of Philadelphia, supra; Trowbridge v.
Abrasive Co. of Phila., 190 F. (2) 825. In short, the instruction
is erroneous in the respects alleged, and, being erroneous in these
important respects it was prejudicial and the trial court erred in
not granting the appellant Ruud a new trial because of its prejudicial
effect.

The Fyrogas Company does not question the sufficiency of the evidence to support the verdict against it, but in submitting its liability, upon this phase of the case, the plaintiff offered and the court gave an instruction, number one, identical in its deficiencies with instruction number three and for that reason Fyrogas, upon its appeal, is likewise entitled to a new trial.

It is not necessary to also determine whether other instructions, given or refused, were proper or improper, or whether the court erred in the admission or rejection of evidence, or in refusing to grant new trials upon other grounds. The judgment as to Elmer W. Conc Company is affirmed. The judgment as to Robertshaw-Fulton Controls Company, Ruud Manufacturing Company and the Fyrogas Company is reversed and remanded. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by BARRETT, C., is adopted as the opinion of the court. All the judges concur.